UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PARKCREST BUILDERS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO:   15-1533** |
| **HOUSING AUTHORITY OF NEW ORLEANS (HANO)** | **SECTION: "J" (4)** |

## ORDER AND REASONS

Before the Court is a **Motion for Leave to File First Supplemental and Amended Counterclaim (R. Doc. 71)** filed by the Housing Authority of New Orleans ("HANO") seeking an order from the Court to allow it to file its first supplemental and amended counterclaim. The motion is opposed. R. Doc. 72. The motion was submitted on January 11, 2017. For the following reasons, the motion for leave to file is **GRANTED.**

**I.     Background**

This diversity action was filed on May 8, 2015 by the Plaintiff Parkcrest Builders, LLC ("Parkcrest") seeking a Declaratory Judgment and Judgment for Damages in connection with a contract dispute between itself, as the original contractor, and Defendant HANO. R. Doc. 21, p. 2. Parkcrest alleges that on March 4, 2013 it entered into a contract with Defendant for the construction of the Florida Avenue: New Affordable Housing Units ("the Project") for the amount of $11,288,000.00 R. Doc. 1, p. 3. During work on the Project, there were a number of delays which Parkcrest argues were not in its control. As a result of these delays, Parkcrest states that on April 10, 2015 HANO sent a Notice of Final Default and Termination to Parkcrest stating that Parkcrest was in final default of the contract and terminating Parkcrest's right to complete the project. R. Doc. 1, p. 7. Parkcrest alleges that the delays HANO cited as the justification for the notice of default were not attributable to Parkcrest. R. Doc. 21, p. 2. As such, arguing that it was not in default, Parkcrest alleges that the termination was "for convenience" and therefore entitles

1

it to remuneration under its contract with HANO. R. Doc. 21, p. 3. Parkcrest has also alleged that HANO has breached the contract. *Id.* HANO has filed a counterclaim alleging that the delays were the sole fault of Parkcrest and seeking damages for the delays. R. Doc. 23. HANO also asserted claims against Parkcrest that arose after a Takeover Agreement was executed with Liberty Mutual. *Id.*

On September 1, 2016, Liberty Mutual intervened and filed a separate complaint against HANO. R. Doc. Liberty Mutual alleges that it issued a payment and performance bond in connection with the Project pursuant to the Louisiana Public Works Act, La. R.S. 38:2216 and 2242. R. Doc. 32, p. 3. Liberty Mutual states that the bond named the Plaintiff as the principal and the Defendant as obligee. Further, Liberty Mutual alleges that in June 2015 it executed a Takeover Agreement[1] with the Defendant regarding the Project following the termination of Plaintiff from the Project. *Id.* p. 5. As part of that agreement, Liberty Mutual retained the Plaintiff as the "completion contractor" to carry out the contract work and to deal directly with the Defendant for the remainder of the Project. However, after executing the Takeover Agreement, Liberty Mutual argues that HANO immediately began violating the terms by: not making timely payments for unpaid Project funds; failing to timely respond to change order proposals or finalize change orders; failing to timely process pay applications and timely pay Liberty; timely issue punch lists; and did not grant substantial completion for the project when it received Certificates of Completion and Occupancy on November 18, 2015. *Id.* at p. 6-8. Thereafter, on June 29, 2016, Liberty Mutual alleges that it was wrongfully terminated from the Project by HANO, who intended to complete the punch lists items with a third-party contractor. As such, Liberty asserts claims of breach of

---

[1] Note, the Defendant incorporates the Takeover Agreement and actions subsequent to the Takeover Agreement in its counterclaim against the Plaintiff.

contract, bad faith breach of contract, and two counts of wrongful termination against HANO. *Id.* at 9-15.

Thereafter, on September 22, 2016, HANO filed a counterclaim against Liberty. R. Doc. 37, p. 17. HANO argues that after executing the Takeover Agreement Liberty acted as a de-facto contractor and was therefore liable for amounts in excess of the penal sum of the Bond. *Id.* at p. 18. HANO further asserts that Liberty breached the terms of the Takeover Agreement and that the breach was done in bad faith. *Id.* HANO also asserts that Liberty fraudulently induced HANO into signing the Takeover Agreement. *Id.* HANO also avers that Liberty is liable for liquidated damages as set for in the Takeover Agreement as well as all damages resulting from Liberty's breach of the agreement. *Id*. at p. 19.

On December 19, 2016, Liberty filed a motion for judgment on the pleadings seeking dismissal of HANO's counterclaims that: (i) Liberty made fraudulent representations to HANO; (ii) Liberty breached the Takeover Agreement by naming Parkcrest as the completion contractor; and (iii) Liberty was the de-facto contractor. R. Doc. 67.

Thereafter, on December 28, 2016, HANO filed the subject motion to amend and supplement its counterclaim. R. Doc. 71. In its motion, HANO argues that the motion to amend and supplement should be granted because the motion to amend is filed within the deadline for such amendments in accordance with the District Court's scheduling order. R. Doc. 71-1, p. 2.

While it does not wholesale oppose the granting of HANO's motion, Liberty opposes HANO's motion to amend and supplement its counterclaim insofar as it relates to the above mentioned claims at issue in the pending motion for judgment on the pleadings. R. Doc. 72, p. 3. Liberty argues that HANO's attempted amendment is futile because it does not correct the problems with those claims. *Id.* at p. 2. Additionally, Liberty also argues that any allegations that Liberty fraudulently withheld the dual nature of its Project presentative/non-testify expert

3

Meridian Consulting Group, LLC ("Meridian") are prejudicial in that they are an attempt to circumvent discovery into Liberty's assertion of attorney-client and work product privileges associated with Meridian as a non-testifying expert. *Id.* at p. 2-3.

## II.  **Standard of Review**

Generally, Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id.* In taking this liberal approach, the Rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Rule 15(a) requires a trial court 'to grant leave to amend freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotations marks omitted) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir.2002)). When denying a motion to amend, the court must have a "substantial reason" considering such factors as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ...and futility of the amendment.'" *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994).

An amendment is deemed to be futile if it would be dismissed under a Rule 12(b)(6) motion. *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir 2003)). "It is well-established, of course, that the Rule 12(b)(6) analysis necessarily incorporates the federal pleading standard articulated in *Bell Atlantic Corp. v. Twombly*: 'To pass muster under Rule 12(b)(6), [a] complaint

4

must have contained 'enough facts to state a claim to relief that is plausible on its face.'" *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp.*, 818 F.3d 193, 200 (5th Cir. 2016). As such, the Court must accept all well-plead facts as true and view them in the light most favorable to the non-moving party. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004) (internal quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).Where viability of a claim is at least facially possible, futility does not provide grounds for denying an amendment. *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 353–54 & n. 6 (5th Cir.2011).

### III.   Analysis

HANO has filed a motion for leave to file its first supplemental and amended counterclaim. R. Doc. 71. HANO argues that because the amendment has been timely filed under the Court's scheduling order, the motion should be granted. R. Doc. 71-1, p. 2. However, despite the liberal standard in evaluating such motions, leave to amend is "not automatic." *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013). As such, the Court will not grant HANO's motion merely because the amendment is timely.

In opposition to the motion, Liberty alleges that three of HANO's allegations in the amendment are futile and that one allegation—to the extent that it is not futile—unduly prejudices Liberty. R. Doc. 72. In particular, Liberty argues that HANO's amended counterclaim fails to support the claims that: (i) Liberty made fraudulent representations to HANO; (ii) Liberty breached the Takeover Agreement by naming Parkcrest as the completion contractor; and (iii) Liberty was the de-facto contractor. Moreover, Liberty argues that it will be unduly prejudiced if HANO is allowed to allege that Liberty fraudulently concealed the dual nature of Meridian as on-site consultant and non-testifying expert. R. Doc. 72, p. 19-20.

### A.     Futility

First, Liberty argues that the amended counterclaim is futile because HANO has failed to sufficiently allege a claim of fraud. R. Doc. 72, p. 11. Here, the amended counterclaim, which incorporates the original counterclaim, alleges that Liberty committed fraud by: concealing Liberty's intention to rehire Parkcrest as the completion contractor until late in the negotiations; hiding the dual nature of Meridian as both consultant and non-testifying expert/litigation consultant; and not revealing the existence of a dual defense agreement between Liberty and Parkcrest. R. Doc. 71-4, p. 3-5.

Under Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code. Ann. art. 1953 (2016). "To prove fraud, a party must show an intent to defraud and actual or potential loss or damages." *Pellerin Const., Inc. v. Witco Corp.*, 169 F. Supp 2d 568, 580 (E.D. La. 2001) (citing *Williamson v. Haynes Best W. of Alexandria*, 688 So.2d 1201, 1239 (La. App. 4th Cir.1997)). "[I]n order '[t]o find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information.'" *McCarthy v. Evolution Petroleum Corp.*, 180 So.3d 252, 258 (La. 2015) (quoting *Greene v. Gulf Coast Bank*, 593 So.2d 630, 632 (La. 1992)). "To prevail on a fraud claim against a party to a contract a plaintiff must prove: (1) a misrepresentation, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract." *Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d 602, 614 (E.D. La. 2015) (citing *Shelton v. Standard/700 Associates,* 798 So.2d 60, 64 (La. 2001)).

"In Louisiana, '[a]lthough a party may keep absolute silence and violate no rule of law or equity, ... if he volunteers to speak and to convey information which may influence the conduct of

6

the other party, he is bound to [disclose] the whole truth.'" *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 419 (5th Cir. La.2008) (quoting *American Guaranty Co. v. Sunset Realty & Planting Co.*, 208 La. 772, 23 So.2d 409, 455–56 (1944)). Additionally, "Louisiana courts have 'tended to impose a duty [to speak] when the circumstances are such that the failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed.'" *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 401 (E.D. La. 2016) (quoting *Bunge Corp. v. GATX Corp.*, 557 So.2d 1376, 1384 (La. 1990)). The existence of a duty to disclose is a legal question, and the Court considers: "whether the obligation is being imposed on a seller, who is more likely to be required to disclose; the importance of the fact not disclosed; the relationship of the parties; and the nature of the fact not disclosed." *Id.* at 401-02.

Moreover, Federal Rule of Civil Procedure 9(b) requires "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." State-law fraud claims are also subject to this requirement. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). Nonetheless, "[f]raud by silence…'is, by its very nature, difficult to plead with particularity.'" *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993) (Clement, J.) (quoting *Daher v. G.D. Searle & Co.*, 695 F. Supp. 436, 440 (D. Minn. 1988)); *Sheppard v. Liberty Mutual Ins. Co.*, No. 16-2401, 2016 WL 6807400, at *3 (E.D. La. Nov. 17, 2016) (Vance, J.); *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, No. 15-638, 2016 WL 5869787, at *9 (E.D. La. Oct. 7, 2016) (Engelhardt, J.). "[A claimant] alleging fraud by silence should be able to allege the following with reasonable particularity: (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the

7

fraudulent conduct gained by withholding the information." *Chrysler Credit Corp.*, 824 F. Supp. at 598.

At this procedural juncture, the Court is not convinced that it is not at least facially possible that HANO has stated valid fraud claims against Liberty. HANO has alleged three of the four required pleadings described in *Chysler Credit Corp.* by Judge Clement. Namely, HANO: (i) described that Liberty withheld information concerning the hiring of Parkcrest, the dual role of Meridian, and the dual defense agreement; (ii) that these statements occurred in the negation of the Takeover Agreement; and that Liberty was engaged in the fraudulent conduct. R. Doc. 71-4, p. 3-6. Moreover, HANO has alleged enough facts to make it facially possible that Liberty owed a duty to disclose in that "the circumstances are such that the failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed.'" *First Am. Bankcard, Inc.*, 178 F. Supp. 3d at 401. Moreover, HANO has alleged that these omissions substantially influenced HANO's decision to enter the Takeover Agreement. This appears to at least facially meet the necessary bar for pleading fraud. *See First Am. Bankcard, Inc.*, 2016 WL 5869787 at *11 ("[A]s mentioned previously, Plaintiff has alleged sufficient facts to meet three of the four elements required to show fraud by silence as posited by Judge Clement. As to the fourth element, the Court finds that enough has been alleged to support the existence of a duty to disclose.").

And, given the underlying motion for judgment on the pleadings pending before the District Court (R. Doc. 67), the Court is unwilling to engage in a more thorough analysis. Rule 15 is a liberal standard, and the Court should deny an amendment only for a substantial reason. Liberty's legal arguments as to the sufficiency of these fraud claims—however valid—are more properly addressed and handled through fully developed briefs and a motion to dismiss/motion for judgment on the pleadings. *See Total Safety U.S., Inc. v. Rowland*, No. 13-6109, 2014 WL 793453,

at *4 (E.D. La. Feb. 26, 2014) (Lemelle, J.) ("These arguments delve too deeply into the disputed merits of the factual and legal claims, which the Court considers more properly addressed through further briefs and upon motions for dismissal or summary judgment."); *Burgo v. Stansbury,* 2016 WL 5779566, at *2 (E.D. La. Oct. 4, 2016) ("While the amendment may be futile because of the jurisdictional and immunity issues identified below, the Court finds that justice requires the amendment be allowed at this time, with the jurisdictional and immunity issues to be decided at a later date."). As such, the Court will not deny these facially possible claims at this time.

Liberty also challenges HANO's amended and supplemental counterclaim as futile in regards to any claims that Liberty did not have the sole right to designate a completion contractor under the terms of the Takeover Agreement. R. Doc. 72, p. 15. Liberty argues that any claims that the Takeover Agreement has conflicting terms amount to legal conclusions which should be dismissed by the Court. *Id.* at p. 16. Liberty also argues that any claims that Liberty withheld its selection of Parkcrest until late into the negotiations constitutes parol evidence of prior negotiations which should be excluded as irrelevant. *Id.* at p. 17.

Again, however, the Court opines that these are legal arguments that similarly go the merits of HANO's counterclaims and that HANO's counterclaim is not so facially futile as to be without any possible merit. These arguments are more suited to fully briefed motions addressing these claims. As such, in light of the liberal standard under Rule 15, the Court will allow the motion to amend.

Liberty further argues that HANO's claim that Liberty acted as a "de-facto contractor," thereby expanding Liberty's liability beyond the penal sum of the bond, is also futile. R. Doc. 72, p. 18. However, taken as a whole, HANO's claim is not futile. First, under Louisiana law, a surety may step into the shoes of the original contractor and lose the benefit of the bond penal sum. *See, e.g., Klein v. J.D. & J.M. Collins*, 106 So. 120 (La. 1925). Second, reviewing the complaint in the

9

light most favorable to HANO—particularly that the Takeover Agreement might itself be invalid and that Liberty took a number of steps as "Contractor"—the claim is not so futile as to be denied under Rule 15's liberal standard.

### B.     Undue Prejudice

Finally, Liberty also argues that the motion to amend would unduly prejudice Liberty because it seeks to open for discovery any privileged information concerning Meridian's role as Liberty's consulting expert. R. Doc. 72, p. 19-20.

The Fifth Circuit has cautioned that amendments should not be permitted where they would "fundamentally alter the nature of the case." *Hebert v. Specialized Environmental Resources, LLC*, No. 12-0071, 2013 WL 1288219, at *4 (E.D.La. Mar. 23, 2013); *In re American International Refinery, Inc.,* 676 F.3d 455, 467 (5th Cir.2012) (noting that new allegations of fraud in bankruptcy proceeding would have "fundamentally altered" the nature of a case which had previously been limited to determination of whether one party possessed a conflict of interest warranting disgorgement of monies paid); *Mayeaux v. Louisiana Health Serv. & Indem. Co.,* 376 F.3d 420, 427–28 (5th Cir. 2004) (finding that complaint would be "fundamentally altered" where proposed amendment would destroy jurisdiction and "effectively reconstruct[ed] the case anew."). "[T]he touchstone of the inquiry under rule 15(a) is whether the proposed amendment would unfairly prejudice the defense by denying the defendants notice of the nature of the complaint." *Lowery v. Texas A&M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

However, Liberty will likely not be so prejudiced by the amendment so as to create a substantial reason to deny the amendment. As Liberty describes in its own brief, Meridian's dual role as fact witness and as non-testify expert is not a novel or unfamiliar role for the Court to handle. *See United States ex rel. Civil Constr. Techs. v. Hanover Ins. Co.*, No. 13-mc-42-Orl-18TBS, 2013 U.S. Dist. LEXIS 60690, at *7 (M.D. Fla. Apr. 29, 2013) ("Several courts have

10

observed that non-testifying experts can wear two hats. One as a formally retained, non-testifying expert to aid a party preparing for litigation, and the other as a normal fact witness."). To the extent that Liberty is concerned about the disclosure of privileged information, the Court is well suited to handling those concerns moving forward and dealing with the two-hats Meridian wears. Moreover, these counterclaims do not "fundamentally alter the nature of the case" so as to prejudice the defendants. *See Mayeaux*, 376 F.3d at 427 (denying amendment that would "reconstruct[ ] the case anew" and plead a "fundamentally different case with new causes of action and different parties."). Meridian's role on site was already at issue in HANO's breach of contract suit. As such, the Court grants the motion to amend.

### IV.    Conclusion

Accordingly,

**IT IS ORDERED** that HANO's **Motion for Leave to File First Supplemental and Amended Counterclaim (R. Doc. 71)** is **GRANTED.**

New Orleans, Louisiana, this 17th day of January 2017.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**