UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PARKCREST BUILDERS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 15-1533** |
| **HOUSING AUTHORITY OF NEW ORLEANS (HANO)** | **SECTION: "J" (4)** |

Before the Court is a **Motion to Compel (R. Doc. 91)** filed by Liberty Mutual Insurance Company ("Liberty"), seeking an order from the Court to compel the Housing Authority of New Orleans ("HANO") to fully respond to its First Set of Interrogatories and Requests for Production of Documents. The motion is opposed. R. Doc. 98. The motion was submitted on March 8, 2017 and heard with argument that same day. For the following reasons, the motion to compel is **DENIED**.

I.  **Background**

This diversity action was filed on May 8, 2015 by the Plaintiff Parkcrest Builders, LLC seeking a Declaratory Judgment and Judgment for Damages in connection with a contract dispute between itself, as the original contractor, and Defendant HANO. R. Doc. 21, p. 2. The Plaintiff alleges that on March 4, 2013 it entered into a contract with Defendant for the construction of the Florida Avenue: New Affordable Housing Units ("the Project") for the amount of $11,288,000.00 R. Doc. 1, p. 3. During work on the Project, there were a number of delays which the Plaintiff argues were not in its control. As a result of these delays, Plaintiff states that on April 10, 2015 Defendant sent a Notice of Final Default and Termination to the Plaintiff stating that the Plaintiff was in final default of the contract and terminating Plaintiff's right to complete the project. R. Doc. 1, p. 7. Plaintiff alleges that the delays Defendant cited as the justification for the notice of default were not attributable to the Plaintiff. R. Doc. 21, p. 2. As such, arguing that it was not in default,

Plaintiff alleges that the termination was "for convenience" and therefore entitles the Plaintiff to remuneration under its contract with Defendant. R. Doc. 21, p. 3. Plaintiff has also alleged that the Defendant has breached the contract. *Id.* The Defendant has filed a counterclaim alleging that the delays were the sole fault of the Plaintiff and seeking damages for the delays. R. Doc. 23. The Defendant also asserted claims against the Plaintiff that arose after a Takeover Agreement was executed with Liberty Mutual. *Id.*

On September 1, 2016, Liberty Mutual intervened and filed a separate complaint against HANO. R. Doc. Liberty Mutual alleges that it issued a payment and performance bond in connection with the Project pursuant to the Louisiana Public Works Act, La. R.S. 38:2216 and 2242. R. Doc. 32, p. 3. Liberty Mutual states that the bond named the Plaintiff as the principal and the Defendant as obligee. Further, Liberty Mutual alleges that in June 2015 it executed a Takeover Agreement[1] with the Defendant regarding the Project following the termination of Plaintiff from the Project. *Id.* p. 5. As part of that agreement, Liberty Mutual retained the Plaintiff as the "completion contractor" to carry out the contract work and to deal directly with the Defendant for the remainder of the Project. However, after executing the Takeover Agreement, Liberty Mutual argues that HANO immediately began violating the terms by: not making timely payments for unpaid Project funds; failing to timely respond to change order proposals or finalize change orders; failing to timely process pay applications and timely pay Liberty; timely issue punch lists; and did not grant substantial completion for the project when it received Certificates of Completion and Occupancy on November 18, 2015. *Id.* at p. 6-8. Thereafter, on June 29, 2016, Liberty Mutual alleges that it was wrongfully terminated from the Project by HANO, who intended to complete

---

[1] Note, the Defendant incorporates the Takeover Agreement and actions subsequent to the Takeover Agreement in its counterclaim against the Plaintiff.

the punch lists items with a third-party contractor. As such, Liberty asserts claims of breach of contract, bad faith breach of contract, and two counts of wrongful termination against HANO. *Id.* at 9-15.

Thereafter, on September 22, 2016, HANO filed a counterclaim against Liberty. R. Doc. 37, p. 17. HANO argues that after executing the Takeover Agreement Liberty acted as a de-facto contractor and was therefore liable for amounts in excess of the penal sum of the Bond. *Id.* at p. 18. HANO further asserts that Liberty breached the terms of the Takeover Agreement and that the breach was done in bad faith. *Id.* HANO also asserts that Liberty fraudulently induced HANO into signing the Takeover Agreement. *Id.* HANO also avers that Liberty is liable for liquidated damages as set for in the Takeover Agreement as well as all damages resulting from Liberty's breach of the agreement. *Id*. at p. 19.

Liberty issued its first set of Interrogatories and Requests for Production to HANO on October 7, 2016. R. Doc. 91-2. Thereafter, Liberty granted an extension to respond to HANO to December 7, 2016. R. Doc. 91-1, p. 3. On December 6, 2016, HANO requested an additional extension of time through the end of the year. R. Doc. 91-2, p. 27-28. Liberty agreed but encouraged HANO to produce the documents on a rolling basis as the Court had encouraged HANO to do. *Id.*

In the intervening time period, the Court held a discovery conferences on December 1, 2016 as well as on December 14, 2016 to help facilitate discovery and develop and ESI Protocol. R. Docs. 62 & 65.

On December 30, 2016, HANO provided written responses to Liberty's First Set of Interrogatories. On January 4, 2017, HANO provided written responses to Libtery's Requests for

Production of Documents and partially produced documents responsive to those requests. R. Doc. 91-1, p. 4.

In particular, Liberty that HANO generally failed to verify its responses, provide responsive answers to certain interrogatories, produce the entirety of HANO's documents as agreed, and produce metadata or native format documents for ESI in accordance with the ESI protocol. *Id.*

Noting these deficiencies, Liberty held a telephone conference with HANO on February 10, 2017. *Id.* at p. 5. HANO agreed to supplement and verify its responses to interrogatories nos. 4-6, 8, 13, 16-17, 20-21 and Request for Production Nos. 9-10 and 15-17 on or before March 6, 2017. HANO agreed to produce certain metadata moving forward, but did not agree to produce additional metadata for documents already produced. HANO also refused to specifically produce any email or correspondence sent or received by anyone other than Patrick Kennedy or Hollie Deharde.

At this time, Liberty has filed the instant motion to compel seeking an order of the Court to compel HANO to: (i) produce its documents in accordance with the ESI protocol; (ii) produce the entirety of its responses; and (iii) supplement its inadequate email production.

## II.    Standard of Review

Discovery of documents, electronically stored information, and things is governed by Federal Rule of Civil Procedure 34. Rule 34 allows a party to request the production of "any designated documents or electronically stored information" or "any tangible things." *Id.* Similarly, Rule 33 allows a party to serve another party written interrogatories which "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).

Both Rule 33 and 34 allow a party to ask interrogatories and request production to the extent of Rule 26(b). Fed. R. Civ. P. 33(a)(2); 34(a).

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . . ." Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.

Federal Rule of Civil Procedure 37 provides sanctions for failure to cooperate in discovery. Rule 37(a) allows a party in certain circumstances to move for an order compelling discovery from another party. In particular, Rule 37(a)(3)(b)(iii)-(iv) allows a party seeking discovery to move for an order compelling an answer or production of documents where a party "fails to answer an interrogatory" or "fails to produce documents." An "evasive or incomplete" answer or production is treated the same as a complete failure to answer or produce. Fed. R. Civ. P. 37(a)(4).

In addition to alleging that the responding party has failed to properly cooperate with discovery, a motion to compel under Rule 37(a) must also "include a certification that the movant

has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 31(a)(1).

### III. Analysis

At this time, Liberty has filed the instant motion to compel seeking an order of the Court to compel HANO to: (i) produce its documents in accordance with the ESI protocol; (ii) produce the entirety of its responses; and (iii) supplement its inadequate email production.

#### A. ESI Protocol Production

Liberty argues that HANO has produced over 13,000 documents in TIF format without any relevant metadata fields that are typically provided. R Doc. 91-1, p. 6. Liberty argues that the ESI Protocol entered into by the Parties inherently provides that certain metadata would be produced. *Id.* In particular, Liberty seeks the following metadata: "Begdoc, Enddoc, BegAttach, Endattach, DateCreated, DateSent, DateReceived, Date Last Modified, TimeCreated, TimeSent, TimeReceived, TimeLast Modified, Author, From, To, CC, BCC, Subject, Title, Filename, MD5Hash, Filesize, File Extension, Application, Number of Attachments, Custodian, File Location and File Type." *Id.* at p. 7.

In response, HANO argues that the ESI Protocol allowed for the production of documents in .Tiff format and that it would be unreasonable and unduly burdensome to require HANO to reproduce its previous document production with metadata. R. Doc. 98, p. 3. During oral argument, HANO clarified that it had produced its documents in .Tiff with some native format metadata—a contention which Liberty did not dispute.

The ESI Protocol signed by the Parties provides in relevant part:

> c. Format. ESI shall be produced to the Requesting Party with searchable text, in the following formats:
>
>> (1) Native Format, or

6

>> (2) TIFF with data load files and a companion text file, unaltered except to reflect information redacted per the Federal Rules and to include Bates stamp numbers.
>>
>> (3) HANO will produce its ESI in accordance with Subsection II(C)(6)(c)(2). HANO will produce native format versions of its ESI to the extent requested by Liberty and/or Parkcrest after HANO's initial production of documents, when the native format contains discoverable information which is not easily reviewable as initially produced or when the native document contains additional discoverable information not included in the format initially produced.
>
> d. Metadata fields. Documents produced in TIFF with companion text need not fully contain all native format metadata. The parties agree to maintain a copy of their ESI in its original format(s) throughout the duration of the litigation related to the Project in the event that additional metadata may be requested to be produced in the future. If metadata is produced, any metadata fields containing attorney work product, trial preparation data, or other privileged information will be excluded as privileged. Regardless of format, if documents are disclosed with privileged Metadata, upon discovery, the party receiving the documents must notify the producing party, return the entire production set to the Producing Party, and destroy all copies. The Producing Party will provide a duplicate production without the privileged Metadata. All parties agree that inadvertent disclosure of metadata does not constitute a waiver of privilege.

R. Doc. 66, p. 12.

From these provisions, it appears that HANO properly produced its documents in accordance with the ESI Protocol. *See* R. Doc. 66, p. 12 (allowing documents to be produced in .TIFF format). While Liberty may be entitled to request native format for documents that are not easily reviewable, Liberty has only argued that it would be "more efficient" to review the documents if the metadata was provided rather than that the metadata contains further discoverable information. Therefore, because HANO has produced documents in .TIFF with some native format metadata, the motion to compel is denied.

### B. Production of Other Responses

Liberty has also moved to compel HANO to produce the remaining documents and curative responses by a date certain. R. Doc. 91-1, p. 10. Liberty argues that it has granted a number of

extensions through December 31, 2016, but now requires responses because delayed discovery would hinder its trial preparation. *Id.* at p. 9-10. Liberty also noted that the Court has already encouraged HANO to provided discovery on a rolling basis. *Id.*

HANO opposes the motion to compel at this time as premature. R. Doc. 98, p. 3. HANO argues that in the February 10, 2017 conference Liberty allowed for responses to be completed by March 6, 2017. *Id.*

During oral argument, HANO stated that it had completed production of its responses the day before at midnight. Liberty acknowledged receipt of that production, but stated that it had not had time to fully review that production. Therefore, at this time, the Court denies the motion to compel to this extent as moot given that HANO appears to have completed production.

### C. Email Production

Liberty has also moved to compel HANO to supplement its responses with the emails of other HANO employees, namely Jennifer Adams and Kevin Oufnac. R. Doc. 91-1, p. 10. Liberty argues that these emails are relevant and that HANO's limited production to the emails of Patrick Kennedy, the construction manager for the Project, and Hollie Deharde, the project manager for the Florida project, is unreasonable. In opposition HANO argues that its production of Kennedy's and Deharde's emails are sufficient and responsive to Liberty's requests. R. Doc. 98

As the Court explained during oral argument, at this stage of initial discovery requests, the ESI Protocol provides the parameters by which HANO and Liberty agreed to proceed with discovery. As part of that Protocol, the "key persons" identified for the Project in connection with HANO are Deharde and Kennedy. Given this, the Court explained that it would hold the Parties to this agreement at this stage of discovery and not require more at this time. Therefore, the Court denies the motion to compel to this extent.

Nonetheless, the Court cautioned counsel for HANO that moving forward they should be sure that they are doing their due diligence to ensure that all emails are being produced, particularly in regards to the use of private emails or emails that may not have followed HANO policy. Counsel has an obligation to ensure that all relevant emails are being produced and to ensure that their clients are providing those documents. *See Zubulake v UBS Warburg*, LLC, 229 F.R.D. 422, 432 (S.D. NY 2004) (noting that counsel must once litigation ensures, counsel must monitor the party's efforts to retain and produce the relevant documents); *Qualcomm Inc. v. Broadcom Corp.*, No. 05-1958, 2008 WL 66932, at *13 (S.D. Cal. Jan. 7, 2008) (finding counsel's actions sanctionable where counsel "chose not to look in the correct locations for the correct documents…[or] accept the unsubstantiated assurances of an important client that its search was sufficient"), *vacated in part*, No. 05-1958, 2008 WL 638108 (S.D. Cal. Mar. 5, 2008).

### D.     Attorney's Fees

Because the Court denies the motion to compel, Liberty should not be awarded costs.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that **Motion to Compel (R. Doc. 91)** is **DENIED**.

New Orleans, Louisiana, this 8th day of March 2017.

                                  **KAREN WELLS ROBY**
                                  **UNITED STATES MAGISTRATE JUDGE**