UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PARKCREST BUILDERS, LLC | CIVIL ACTION |
| VERSUS | NO: 15-1533<br>c/w 16-14118<br>16-15849 |
| THE HOUSING AUTHORITY OF NEW ORLEANS | SECTION: "J"(4) |

## ORDER AND REASONS

Before the Court is a *Motion for Judgment on the Pleadings* **(Rec. Doc. 67)** filed by Intervenor Liberty Mutual Insurance Company ("Liberty"), an opposition thereto (Rec. Doc. 70) filed by the Housing Authority of New Orleans ("HANO"), and a reply (Rec. Doc. 75) filed by Liberty. Also before the Court is a *Motion for Judgment on the Pleadings and Motion to Dismiss* **(Rec. Doc. 170)** filed by Liberty, an opposition thereto (Rec. Doc. 189) filed by HANO, and a reply (Rec. Doc. 194) filed by Liberty. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED in part and DENIED in part**.

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of disputes that occurred during the construction of affordable housing units in New Orleans. Liberty

1

alleges that on March 4, 2013, HANO entered into a contract with Parkcrest Builders, LLC ("Parkcrest") whereby Parkcrest would serve as the contractor for the construction of the Florida Avenue: New Affordable Housing Units (the "Project"). (Rec. Doc. 32 at 3.) Liberty alleges that because the project fell within the ambit of the Louisiana Public Works Act, Parkcrest was obligated to obtain a statutory performance and payment bond, and that it sought the bond from Liberty. *Id*. Liberty avers that it issued a payment and performance bond naming Parkcrest as principal and HANO as obligee in connection with the project and that the bond's penal sum was $11,288,000.00. (Rec. Doc. 67-1 at 4.)

Liberty alleges that the relationship between HANO and Parkcrest deteriorated during the course of the project, and on April 10, 2015, HANO terminated Parkcrest. On May 8, 2015, Parkcrest brought this suit against HANO, alleging that the delays in the project were caused by HANO and that HANO breached the contract by terminating Parkcrest "for convenience." (Rec. Doc. 1.) HANO filed a counterclaim against Parkcrest, alleging that delays in the project were attributable solely to Parkcrest. (Rec. Doc. 22) In its counterclaim, HANO seeks damages for the delays and also asserts claims that allegedly arose after Parkcrest was terminated from the project. *Id*. at 15.

After terminating Parkcrest, HANO called upon Liberty to perform its obligations as surety for Parkcrest. On or about June 9, 2015, HANO and Liberty entered into a Takeover Agreement to complete the project. Liberty and HANO dispute the factual details leading up to the Takeover Agreement, the interpretation of the Takeover Agreement, and the details surrounding implementation of the Takeover Agreement. These disagreements create the basis for the instant motion.

Once the Takeover Agreement was executed, Liberty retained Parkcrest as its completion contractor. (*See* Rec. Doc. 32 at 6.) Liberty alleges that HANO began violating the Takeover Agreement's terms shortly thereafter by failing to make required payments, reducing the amounts approved for payment, failing to timely respond to change order proposals submitted by Parkcrest, and failing to timely issue punch lists and grant substantial performance of the project. *Id*. at 6-8. Liberty alleges that it was working to complete items on a punch list that HANO had purposefully withheld when HANO terminated it from the project on June 29, 2016. *Id*. at 8-9.

Liberty then intervened in this lawsuit to allege breach of the Takeover Agreement, bad faith breach of contract, and wrongful termination claims. (Rec. Doc. 32.) In response, HANO filed a counterclaim against Liberty. (Rec. Doc. 37 at 17.) HANO alleges

3

that Liberty acted as a de-facto contractor and is therefore liable in amounts in excess of the penal sum of the bond. *Id*. HANO further alleges that Liberty breached the terms of the Takeover Agreement in bad faith and that it induced HANO to sign the Takeover Agreement through fraudulent misrepresentation. *Id*. HANO alleges that it is due stipulated damages and general damages arising out of Liberty's failure to perform. *Id*.

On December 19, 2016, Liberty filed an initial motion for judgment on the pleadings **(Rec. Doc. 67)** on HANO's counterclaim. Thereafter, HANO moved to file a first supplemental and amended counterclaim ("first amended counterclaim") which the Magistrate Judge granted. (*See* Rec. Doc. 79.) HANO then moved to file a second supplemental and amended counterclaim ("second amended counterclaim"), which the Magistrate Judge also granted. (*See* Rec. Doc. 124.) Liberty responded by filing a second motion for judgment on the pleadings, this time also requesting dismissal of HANO's fraud claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). **(Rec. Doc. 170)**. HANO's second amended counterclaim incorporates the original and the first amended counterclaims. Accordingly, the Court will analyze the instant motion for judgment on the pleadings and motion to dismiss by referring to the briefing for both motions filed by Liberty and the original, first amended, and second amended counterclaim. *See*

*Johnson v. Moog, Inc.*, No. 10-67, 2011 WL 719600, at *1 n.1 (E.D. Tex. Feb. 22, 2011).

**<u>PARTIES' ARGUMENTS</u>**

Liberty argues that HANO's fraud claim should be dismissed because Liberty was under no obligation to disclose that its representative for completing the construction was also providing Liberty with litigation services. Liberty also argues that HANO's breach of contract claim should be dismissed to the extent that HANO alleges that Liberty breached the contract by using Parkcrest as the completion contractor. More specifically, Liberty argues that the terms of the Takeover Agreement explicitly permitted Liberty to use Parkcrest as the completion contractor. Finally, Liberty argues that its liability is capped at the penal sum of its bond because the Takeover Agreement specifically states that Liberty would not be liable in excess of that amount.

In opposition, HANO argues that its fraud claim should not be dismissed because Liberty withheld the true nature of the construction representative's and Parkcrest's role in the project, and that HANO would not have entered into the Takeover Agreement had it known the entire truth. HANO also argues that its breach of contract claim states a clear cause of action. HANO further contends that Liberty is liable in excess of the penal sum of the

bond because it acted as a de-facto contractor on the project and therefore lost the benefit of its liability cap.

## LEGAL STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion brought pursuant to Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).

Courts evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all

reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

## DISCUSSION

### I. Fraud

HANO's fraud claim revolves around three misrepresentations allegedly made by Liberty during negotiations of the Takeover Agreement. Neither party disputes that the Takeover Agreement contained the following provision: "[I]t is the Surety's right, at its sole discretion, to choose the completion contractor under this agreement." (*See* Rec. Doc. 67-1 at 5; Rec. Doc. 80 at 3.) Thus, HANO acknowledges that the plain terms of the Takeover Agreement permitted Liberty to use Parkcrest as its completion contractor. However, HANO asserts that the three alleged misrepresentations made by Liberty induced HANO to agree to parts of the Takeover Agreement to which it would not have otherwise consented.

7

The first alleged misrepresentation made by Liberty is how it characterized its decision to use Parkcrest as its completion contractor under the Takeover Agreement. HANO alleges that a Liberty representative told HANO's project manager that Liberty intended to use Parkcrest as the completion contractor in order to use Parkcrest's subcontractors and finish the project more quickly. HANO also alleges that a Liberty representative told HANO that Liberty had done a thorough search of Parkcrest's work throughout the country and found it to be satisfactory. HANO alleges that neither statement was true and that these misrepresentations masked the depth of the relationship between Liberty and Parkcrest.

The second alleged misrepresentation is very similar to the first. HANO alleges that the real reason Liberty wanted Parkcrest to be the completion contractor is that Liberty and Parkcrest had engaged in a "dual defense agreement." As stated above, Parkcrest had already filed suit against HANO prior to the execution of the Takeover Agreement. HANO alleges that Liberty and Parkcrest had entered into a mutual agreement to defend Parkcrest's performance on the project. HANO further alleges that Liberty never mentioned the existence of this agreement to HANO in the period leading up to the execution of the Takeover Agreement. HANO alleges that it

would not have agreed to allow Parkcrest to serve as completion contractor if it had known.

Finally, HANO alleges that Liberty intentionally misrepresented to HANO the nature of Liberty's relationship with a company called Meridian Consulting Group, LLC ("Meridian"). HANO states that it only consented to the use of Parkcrest as completion contractor because Liberty agreed to "continually maintain a representative on the project" to provide full-time oversight and management. The representative was to serve as a liaison between HANO and Parkcrest should any more disputes arise. Liberty told HANO that it chose Meridian to play this supervisory role of construction consultant. But HANO alleges that Liberty did not disclose to HANO the true nature of the relationship between Liberty and Meridian. HANO alleges that Meridian has provided, and continues to provide, Liberty with litigation support and management services. HANO alleges that if it had known the full extent of Meridian's participation, it would not have agreed to allow Meridian serve as the representative. HANO argues that Liberty's failure to disclose Meridian's full participation amounts to fraud.

Under Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or

inconvenience to the other." La. Civ. Code art. 1953. A fraud claim against a party to a contract must contain three basic elements: "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract." *Shelton v. Standard/700 Assocs.*, 2001-0587, p. 5 (La. 10/16/01), 798 So. 2d 60, 64. Federal Rule of Civil Procedure 9(b) also requires that fraud allegations "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

All three misrepresentations alleged by HANO involve a failure to disclose the entire truth. "Fraud may also result from silence or inaction." La. Civ. Code art. 1953. However, when fraud is alleged to have been perpetrated by silence or suppression of the truth, "there must exist a duty to speak or to disclose information." *McCarthy v. Evolution Petroleum Corp.*, 2014-2607, p. 10 (La. 10/14/15), 180 So. 3d 252, 258. Generally, no duty to speak or disclose exists but it "may arise where there exists a fiduciary relationship between the parties." *Becnel v. Grodner*, 2007-1041, p. 4 (La. App. 4 Cir. 4/2/08); 982 So. 2d 891, 894. The Louisiana Supreme Court has described a fiduciary

relationship as "one that exists when confidence is reposed on one side and there is resulting superiority and influence on the other." *Plaquemines Par. Comm'n Council v. Delta Dev. Co.*, 502 So. 2d 1034, 1040 (La. 1987). "The defining characteristic of a fiduciary relationship . . . is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Scheffler v. Adams & Reese, LLP*, 2006-1774, p. 7 (La. 2/22/07); 950 So. 2d 641, 648.

HANO does not allege that a fiduciary relationship existed between itself and Liberty, nor do the allegations in the counterclaim lead to such a conclusion. In fact, the allegations suggest that the relationship between HANO and Liberty was that of two parties to a business transaction. Liberty's role as surety did not create a fiduciary relationship. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 892 F.2d 199, 207 (2d Cir. 1989) ("[I]n general, a surety does not owe a fiduciary duty to its principal.") Thus, Liberty was not obligated to disclose to HANO the depth of its relationship with either Parkcrest or Meridian. HANO acknowledges that Liberty disclosed Meridian's role as construction consultant. It was not necessary for Liberty to also disclose that Meridian would serve a dual role as its consulting expert and that it would be providing litigation

support. *See Wilson v. Mobil Oil Corp.*, 940 F. Supp. 944, 955 (E.D. La. 1996) ("[A]bsent a duty to disclose, silence with respect to the details of a business transaction does not constitute fraud.")

As to HANO's allegations that Liberty made intentionally false statements about Parkcrest in order to induce HANO to execute the Takeover Agreement, this is inadequately pled. HANO makes a conclusory allegation that Liberty's statement that it had investigated Parkcrest's work throughout the nation was false, but provides no detail to support this accusation. Additionally, HANO's allegation that Liberty committed a misrepresentation by telling HANO that it chose Parkcrest as the completion contractor in order to use Parkcrest's subcontractors falls well short of fraud. Even if Liberty had other reasons for choosing Parkcrest, it is entirely plausible that Liberty was at least partially enticed by the opportunity to use subcontractors who were familiar with the work site. HANO's pleading does not require a contrary conclusion. Moreover, HANO has failed to explain how Liberty's use of Parkcrest as completion contractor and Meridian as construction consultant was meant to obtain an unjust advantage for Liberty or to cause damage or inconvenience to HANO. *See* La. Civ. Code art. 1953. Accordingly, HANO's fraud claim is dismissed.

## II. Breach of the Takeover Agreement

Contracts in Louisiana must be performed in good faith. La. Civ. Cod. art. 1983. "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." La. Civ. Code art. 1997. Bad faith implies "the conscious doing of a wrong for dishonest or morally questionable motives." *Sartisky v. Louisiana Endowment for the Humanities*, No. 14-1125, 2014 WL 5040817, at *2 (E.D. La. Sept. 26, 2014) (quoting *MKR Servs., LLC v. Dean Hart Constr., LLC*, 44,456, p. 6 (La. App. 2 Cir. 7/8/09), 16 So. 3d 562, 566).

HANO alleges that Liberty breached the Takeover Agreement in multiple ways. The original counterclaim makes the general allegation that Liberty, in bad faith, failed to arrange for completion of the project diligently and expeditiously. (Rec. Doc. 37 at 18.) The first amended counterclaim fleshes out the breach of contract claim by providing more specific allegations. First, HANO argues that Liberty and Parkcrest worked in tandem to increase the amount that would be payable to Parkcrest. Second, HANO alleges that Liberty failed to continually maintain a representative on the project during the course of the work. Finally, HANO alleges that Liberty failed to provide adequate oversight and management as agreed in the Takeover Agreement,

13

failed to complete the project according to the contract, and failed to achieve substantial completion.

Liberty does not argue that the entire breach of contract claim should be dismissed; rather, it contends that any allegation that Liberty violated the Completion Agreement when it retained Parkcrest as the completion contractor should be dismissed. However, HANO's breach of contract claims, as stated in both the original, first amended, and second amended counterclaim, includes no allegation that Liberty violated the Takeover Agreement in that manner. In fact, HANO expressly acknowledges that it entered into the Takeover Agreement knowing that Liberty intended to use Parkcrest as the completion contractor. (*See* Rec. Doc. 70 at 1-2.) Accordingly, further analysis of Liberty's motion for judgment on the breach of contract claim is unnecessary and Liberty's motion is denied.

**III. Extent of Liberty's liability**

The final issue is whether Liberty is liable for damages in excess of the penal sum of its bond resulting from the allegations that it breached the Takeover Agreement. As described above, Liberty issued a payment and performance bond naming Parkcrest as principal and HANO as obligee. The bond's penal sum is $11,288,000.00. Liberty argues that its liability is capped at the sum of the penal bond. HANO contends that Liberty functioned

as a de-facto contractor on the project and is therefore liable for amounts exceeding the penal sum of the bond for its alleged breach of the Takeover Agreement.

Louisiana's Public Works Act requires that the successful bidder to whom a public works contract has been awarded "shall furnish good and solvent bond in an amount not less than one-half of the amount of the contract, for the faithful performance of his duties." La. Stat. Ann. § 38:2216(A)(1). The issuance of the bond results in the surety becoming bound "to pay up to the amount of the bond in the event of nonfulfillment or nonperformance of the contractor's obligations for the public works contract." *Scott v. Red River Waterway Comm'n*, 41,009, p. 6 (La. App. 2 Cir. 4/12/06), 926 So. 2d 830, 835. Because Liberty issued a bond on a public works project with the penal sum of $11,288,000.00, this is the extent of its obligation as surety.

The Takeover Agreement includes the following provision: "The liability of Surety under this Agreement is strictly limited to the penal sum of the Bond. In no event will Surety be required to expend more than the penal sum of its Bond."[1] (Rec. Doc. 23-5 at 3.) Nevertheless, HANO alleges that Liberty served as a de-facto contractor on the project after signing the Takeover

---

[1] The Takeover Agreement was filed by HANO as an exhibit to the counterclaim it filed against Parkcrest. HANO's counterclaim against Liberty incorporates by reference its counterclaim against Parkcrest.

Agreement.  In support of this position, HANO alleges that paperwork submitted by Liberty to HANO after execution of the Takeover Agreement was sent and signed by "Contractor: Liberty Mutual."

In Louisiana, a surety who steps into the shoes of the contractor and takes an active role in the completion of the project loses the benefit of its liability being capped at the penal sum. *Klein v. J.D. & J.M. Collins*, 106 So. 120, 122 (1925). In *Klein v. J.D. & J.M. Collins*, the Louisiana Supreme Court addressed a scenario where a contractor agreed to build a duplex apartment complex. *Id*. at 121. The plaintiff alleged that when the contractor on the project could no longer afford to pay its laborers, the surety on the bond agreed to undertake completion of the building. *Id*. The court concluded that if the surety had "left it to the owner to complete the work upon the default of the contractors, unquestionably the company could not be held liable for more than the amount for which it had bound itself as surety . . . ." *Id*. at 122. But if the surety agreed to complete the project upon the contractor's failure to do so, then it "put itself in the place of the contractors from the moment of the new undertaking, and became liable for the costs of completing the building, without reference [to] the amount for which it had signed as surety." *Id*.

Liberty acknowledges that a surety can become bound in excess of the penal sum of the bond when it assumes the role of contractor, but argues that such a scenario could not exist here because the Takeover Agreement expressly states that Liberty's liability is limited to the penal sum of the bond. The Court agrees. The Louisiana Public Works Act "does not specifically detail how the surety may act to remedy a contractor's default in a given situation." *Scott*, 926 So. 2d at 836. When HANO terminated Parkcrest from the project, it called upon Liberty to perform its duty as surety. At that time, both parties entered into the Takeover Agreement whereby Liberty agreed to oversee the Project's completion. As described in *Klein*, Liberty's decision to oversee completion could have exposed it to liability in excess of the penal sum of the bond. It is for this reason that "takeover agreements are often carefully negotiated by sureties to preserve the protection of the bond amount." 4A Bruner & O'Connor Construction Law § 12:22. The Takeover Agreement between HANO and Liberty included a clause expressly limiting Liberty's obligation to the penal sum of the bond. This is one mechanism a surety may employ to prevent becoming liable in excess of the penal sum of the bond. *See Int'l Fid. Ins. Co. v. County of Rockland*, 98 F. Supp. 2d 400, 429 (S.D.N.Y. 2000) ("To avoid liability in excess of the bond amount, . . . the surety must include a clause in the

takeover agreement which limits the surety's liability in the course of performance to the original bond penalty.") (quoting Bruce C. King, *Takeover and Completion of Bonded Contracts by the Survey*, FALL 1997, at 22-23); *Allegheny Cas. Co. v. Archer-W./Demaria Joint Venture III*, No. 8:13-CV-128-SCB-TGW, 2014 WL 4162787, at *11 (M.D. Fla. Aug. 21, 2014) (holding that "even if a performing surety's liability can exceed the penal sum, a performing surety can limit its liability by expressly so providing in a contract with the benefitted obligee"). Moreover, "the meaning and intent of the parties to a written instrument should be determined within the four corners of the document, and its terms cannot be explained or contradicted by extrinsic evidence." *Scott*, 926 So. 2d at 834. The terms of the Takeover Agreement are clear, and the Court need not look beyond them to determine that HANO and Liberty agreed that Liberty would not be liable for damages in excess of the penal bond.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Liberty's *Motion for Judgment on the Pleadings* **(Rec. Doc. 67)** and *Motion for Judgment on the Pleadings and Motion to Dismiss* **(Rec. Doc. 170)** are **GRANTED in part and DENIED in part**.

18

**IT IS FURTHER ORDERED** that Liberty's motion to dismiss HANO's fraud claim is **GRANTED**.

**IT IS FURTHER ORDERED** that Liberty's motion to dismiss HANO's breach of contract claim is **DENIED**.

**IT IS FURTHER ORDERED** that Liberty's liability is capped at the penal sum of the bond.

New Orleans, Louisiana this 5th day of June, 2017.

---
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE