UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PARKCREST BUILDERS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO:   15-1533** |
| **HOUSING AUTHORITY OF NEW ORLEANS (HANO)** | **SECTION: "J" (4)** |

## ORDER

On July 18, 2017, the Court held a discovery conference with the Parties concerning a dispute that arose during the deposition of Jack Lenhart. In particular, Liberty Mutual Insurance Company had asserted that a question asked by the Housing Authority of New Orleans concerning the projected cost of completion called for testimony that was privileged under the consulting-expert privilege. After hearing oral argument on the issue, the Court determined that it would allow additional briefing and heard oral argument on July 26, 2017.

At this time, each party has submitted a briefing on the issue. Liberty argues that Lenhart's report and testimony should be excluded under Federal Rule of Civil Procedure 26(b)(4) and, alternatively, under Louisiana's attorney-client privilege. R. Doc. 288. Liberty has further clarified that Meridian Consulting Group ("Meridian"), Janck Lenhart's employer, was contacted by Liberty's counsel on April 14, 2015 *after* HANO had terminated Parkcrest Builders ("Parkcrest") from the project on April 10, 2015. Liberty's counsel states that it specifically engaged Meridian to assist in its representation of Liberty in connection with the Project. *Id.* at p. 3. The Court notes that this in an interesting use of the word representation as Meridian is a construction consulting firm.

As part of that alleged representation, Meridian developed a cost-to-complete analysis to allegedly aid counsel in advising Liberty as to its potential exposure on its performance bond with Parkcrest. Liberty further states that the communications with Meridian concerning the cost-to-complete analysis were included on its privilege log. Liberty also acknowledges that Meridian did

serve also as an on-site representative for the Project at issue, but that Meridian is allowed to have a dual role of fact witness/non-testify expert as previously recognized by this Court. Finally, Liberty also argues that HANO has also referred to Meridian as Liberty's expert during a number of occasions during this litigation.

HANO has responded in opposition to these arguments. R. Doc. 295. HANO argues that in his deposition Lenhart acknowledged that he completed the cost-to-complete analysis not in preparation for trial, but to avoid trial. While Lenhart testified as to his procedure for conducting the anaylis to arrive at the cost to complete, HANO states that Liberty only objected when HANO asked what the specific cost to complete was. *Id.* at p. 3. HANO argues that Lenhart is not a non-testify expert but rather is a fact witness testifying to what he observed during his role as Liberty's onsite representative. Moreover, HANO argues that Lenhart testified that he did not know of the pending litigation when he completed the cost-to-complete analysis and only became aware of the pending litigation in June of 2016.

Federal Rule of Evidence 26(b)(4)(D) states that "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." However, a party may do so based "on showing [of] exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii); *see also Evans v. T.E. Ibberson Co.*, No. 12–2597, 2013 WL 6796717 at *2 (E.D. La. Dec. 20, 2013) ("This rule affords some protection to counsel who wish to obtain non-testifying experts to assist in trial preparation.").

"In considering whether an expert is preparing materials in anticipation of litigation, the court considers the primary motivating purpose for creation of the document. Litigation need not

be imminent as long as the primary motivating purpose behind the creation of a document is to aid in possible future litigation." *United States v. 9.345 Acres of Land*, No. 11-803, 2012 WL 3961217 at *2 (M.D. La. Sept. 10, 2012). However, documents created in the ordinary course of business are not considered created in anticipation of litigation. *Id.*; *see also*, *Global Oil Tools Inc. v. Barnhill*, No. 12-1507, 2013 WL 1344622, at *6 (E.D. La. Apr. 3, 2013) (quoting Piatkowski v. Abdon Callais Offshore, L.L.C., No. 99–3759, 2000 WL 1145825, at *1 (E.D.La. Aug, 11, 2000)). ("Other courts in this district have found that '[i]f the document would have been created regardless of whether the litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation.'"). "For example, courts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies. Thus, even though litigation is pending or may eventually ensue does not cloak such routinely generated documents with work product protection." *Piatkowski*, 2000 WL 1145825, at *2.

Here, the Court finds that the cost-to-complete analysis is not protected from disclosure under Federal Rule of Civil Procedure 26(b)(4)(D) because the document was not created in anticipation of litigation but rather as a document created in the ordinary course of business. Meridian is "a consulting firm specializing in, among other things, construction consulting, surety services, and project and program management." R. Doc. 288, p. 3. When Liberty hired Meridian, albeit through its counsel, it is not clear that Liberty anticipated any litigation or communicated such to Meridian. Rather, from the Court's understanding of the facts, it appears that Liberty hired Meridian to understand its obligations as surety on the underlying project, including the cost of the work left to be completed. In fact, Lenhart's own testimony is that he was unaware of any litigation until June of 2016. R. Doc. 295-1, p. 11 at Tr. 37-38:18. Moreover, Lenhart also stated that he was asked to begin the process of developing a cost-to-complete budget during a meeting with Liberty

and Parkcrest representatives notably where no counsel was present. *Id.* at p. 16-17 Tr. 54-62. Moreover, Lenhart testified that Merdian was normally retained to *avoid* litigation by providing project management services to Liberty.

The Court has also reviewed the engagement letter authored by Liberty's counsel that engaged Meridian. The letter itself is vague as to the scope of Meridian's engagement, as acknowledged by Liberty's counsel, and *does not* mention any anticipated litigation. At the end of the day, the burden is on Liberty to demonstrate the application of the privilege and demonstrating that Meridian was a non-testifying expert retained in connection with anticipated ligation. Based on the foregoing, Liberty seemed to ask the Court to trust the word of Liberty's counsel that Meridian was consulting in anticipation of litigation. However, without more and based on Lenhart's deposition testimony, the Court finds that the document was created in the normal course of business rather than in anticipation of litigation and is not subject to protection under Federal Rule of Civil Procedure 26(b)(4)(D). For the same reason, the Court does not find that the cost-to-complete analysis "was confidential communication…made for the purpose of facilitating the rendition of professional *legal* services to" Liberty such that it would be protected under Louisiana Code of Evidence Article 506.

Accordingly,

**IT IS ORDERED** that Liberty's objection to HANO's inquiry as to Meridian's projected cost-to-complete analysis is **OVERRULED.**

New Orleans, Louisiana, this 27th day of July 2017.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

4