PARKCREST BUILDERS, LLC                          CIVIL ACTION

VERSUS                                           NO: 15-1533

                                                 c/w 16-14118

                                                 16-15849

HOUSING AUTHORITY OF NEW                         SECTION: "J"(4)
ORLEANS

## ORDER AND REASONS

Before the Court are four separate motions for partial summary

judgment.  The Housing Authority of New Orleans ("HANO") has filed

a *Motion for Partial Summary Judgment on the Issue of Substantial*

*Completion* **(Rec. Doc. 230)**[1] and a *Motion for Partial Summary*

*Judgment to Dismiss Delay Claims Alleged by Liberty and Parkcrest*

**(Rec. Doc. 237)**.[2]  Liberty Mutual Insurance Company ("Liberty")

and Parkcrest Builders, LLC ("Parkcrest") each filed a separate

*Motion for Partial Summary Judgment on the Issue of HANO's Damages*

*Arising out of Work Completed by Colmex Construction, LLC.* **(Rec.**

**Docs. 236 and 247)**, which the Court construes as one motion.[3]

---

[1] Liberty and Parkcrest each filed oppositions to this motion (Rec. Docs. 254
and 252), and HANO filed a reply (Rec. Doc. 280).  HANO also filed a supplemental
memorandum in support of its motion (Rec. Doc. 300) and Liberty filed a sur-
reply (Rec. Doc. 313).
[2] Liberty and Parkcrest each filed oppositions to this motion (Rec. Docs. 255
and 253), and HANO filed a reply (Rec. Doc. 282).
[3] Parkcrest's motion adopts and incorporates by reference Liberty's motion.
HANO filed an opposition to this motion (Rec. Doc. 250), and Liberty filed a
reply (Rec. Doc. 286).

Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that all four motions should be **DENIED.**

**FACTS AND PROCEDURAL BACKGROUND**

This case arises out of disputes that occurred during the construction of affordable housing units in New Orleans. On March 4, 2013, HANO entered into a contract ("Prime Contract") with Parkcrest whereby Parkcrest would serve as the contractor for the construction of the Florida Avenue: New Affordable Housing Units (the "Project"). The Project's scope of work included the construction of twenty-six separate buildings, which would contain fifty-one living units and one management office,[4] as well as the construction of streets, sidewalks, curbs, and other infrastructure elements within the Project area. Because the Project fell within the ambit of the Louisiana Public Works Act, Parkcrest was obligated to obtain a statutory performance and payment bond, and it sought the bond from Liberty. Liberty issued a payment and performance bond naming Parkcrest as principal and HANO as obligee in connection with the Project. The initial contract price was $11,288,000.00 and the initial completion date was to be July 27, 2014.

---

[4] The Prime Contract initially called for fifty-two separate living units.

Progress on the Project was hampered by numerous delays. Parkcrest claims that the delays were caused by issues out of its control. HANO, on the other hand, asserts that the delays were caused by Parkcrest's "failure or inability to execute the work" and that Parkcrest intentionally disregarded contract specifications by performing deficient, poor quality, and non-code compliant work. Whatever the cause, the parties agreed to enter a change order that extended the completion date to September 14, 2014.

The relationship between HANO and Parkcrest deteriorated during the course of the Project and on April 10, 2015, HANO terminated Parkcrest prior to completion. HANO then called upon Liberty to perform its obligations as surety for Parkcrest. On June 9, 2015, HANO and Liberty entered into a Takeover Agreement to complete the project.[5] Once the Takeover Agreement was executed, Liberty retained Parkcrest as its completion contractor and the parties resumed work. However, the Project continued to be plagued by delays and disagreements about their cause. Liberty claims that HANO began violating the terms of the Takeover Agreement immediately after signing it by failing to pay money it already owed, improperly reducing amounts approved for payment,

---

[5] For further discussion of the Takeover Agreement and disputes regarding it, see the Court's Order and Reasons issued on June 5, 2017 granting in part and denying part Liberty's motion for judgment on the pleadings (Rec. Doc. 207).

failing to respond timely to change order proposals submitted by Parkcrest, and failing to timely issue punch lists. HANO denies these allegations and says that all delays are attributable to Liberty. Nevertheless, Liberty informed HANO on May 17, 2016 that it considered the Project to be substantially complete. On June 9, 2016, Mark Clayton, the primary project manager for Perez, APC, sent a letter to HANO stating that he was unable to grant substantial completion. The letter sent by Clayton included attachments of hundreds of pages of punch lists that identified work he determined to be unfinished or deficient. On June 14, 2016, Liberty sent HANO a letter in which Liberty reaffirmed its position that the Project was substantially complete and informed HANO that it would only maintain its insurance and security on the worksite through July 1, 2016. As a result, HANO obtained insurance for the Project effective July 1, 2016 and informed Liberty that it would arrange for a third party contractor to complete the Project. On October 4, 2016, HANO entered into a contract ("Completion Contract") with Colmex Construction, LLC ("Colmex") to perform all necessary work to complete the Project. On March 25, 2017, HANO granted a certificate of substantial completion to Colmex for the Completion Contract.

Parkcrest instituted this suit against HANO on May 8, 2015, alleging that HANO breached the contract by terminating Parkcrest

"for convenience." HANO filed a counterclaim against Parkcrest alleging that delays in the project were attributable solely to Parkcrest. On September 1, 2016, Liberty intervened in this lawsuit to allege breach of the Takeover Agreement, bad faith breach of contract, and wrongful termination claims against HANO. In response, HANO filed a counterclaim against Liberty alleging that Liberty breached the terms of the Takeover Agreement in bad faith and that it induced HANO to sign the Takeover Agreement through fraudulent misrepresentation.

The parties have filed multiple motions for partial summary judgment, all of which are now before the Court. Each motion is fully briefed and will be discussed separately.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness*

*Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a

genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### I.  HANO's Motion for Partial Summary Judgment to Dismiss Delay Claims  Alleged by Liberty and Parkcrest

HANO moves the Court to dismiss all delay claims alleged by Liberty and Parkcrest because it argues that Parkcrest failed to comply with procedures set forth in the contract for identifying the cause of delay as unforeseeable.  More specifically, HANO argues that Parkcrest failed to comply with the requirement that it provide HANO with written notice of the cause of any delay. Such written notice is a pre-condition for having a delay considered excusable.  Thus, HANO argues that no delays in the Project should be considered excusable and that it is due stipulated damages as a matter of law.

Liberty and Parkcrest oppose the motion, arguing that strict application of the written notification requirement is not appropriate for a multitude of reasons.  First, Liberty and Parkcrest argue that HANO had actual knowledge of the cause of the delays and so written notification was unnecessary.  Liberty and Parkcrest also emphasize that they are not seeking additional

compensation for the delays; rather, they intend to prove the delays were excusable in order to avoid liability to HANO for the delays. Liberty and Parkcrest argue that HANO has suffered no prejudice because it had actual notice. Finally, Liberty and Parkcrest claim that HANO waived the written notification requirement by failing to provide written notice to Parkcrest when HANO's contracting officer was replaced by another person.

### A. Relevant Factual Background

The Prime Contract entered into by HANO and Parkcrest incorporated Form HUD-5370 titled "General Conditions for Construction Contracts – Public Housing Programs" (the "General Conditions"). (Rec. Docs. 1-17 and 1-18.) The General Conditions set forth the responsibilities and obligations of the contractor (Parkcrest) and the public housing authority (HANO). The General Conditions also supply a variety of definitions and procedures for addressing termination of the contractor and who bears the burden in case of delay.

The General Conditions gave HANO full authority to terminate Parkcrest from the Project. However, the General Conditions prescribed different outcomes depending on whether HANO terminated Parkcrest for "cause" or for "convenience." A "for cause" termination is one that happens because the contractor refuses or fails to complete the work "with the diligence that will insure

its completion within the time specified in this contract." (Rec. Doc. 1-18 at 1.) If HANO were to terminate Parkcrest for cause, then the General Conditions contained a liquidated damages provision requiring Parkcrest to pay HANO $1,189 for each day of delay. But the General Conditions stipulated a different result if HANO were to terminate the contract because it "determined that such termination is in the best interest of [HANO]." A termination on this ground is considered a termination for "convenience." *Id*. at 2. If HANO were to terminate Parkcrest for convenience, then HANO would be liable to Parkcrest for reasonable and proper costs resulting from the termination.

Section 32 of the General Conditions stated that Parkcrest would not be charged with liquidated damages if the delays were "excusable." A delay would be excusable if it met two requirements. First, the delay must have arisen "from unforeseeable causes beyond the control and without the fault or negligence of [Parkcrest]."[6] *Id*. at 2. The second requirement is

---

[6] The General Conditions provides a non-exhaustive list of examples of such causes:

> (i) acts of God, or of the public enemy, (ii) acts of the [public housing authority] or other governmental entity in either its sovereign or contractual capacity, (iii) acts of another contractor in the performance of a contract with the [public housing authority], (iv) fires, (v) floods, (vi) epidemics, (vii) quarantine restrictions, (viii) strikes, (ix) freight embargoes, (x) unusually severe weather, or (xi) delays of subcontractors or suppliers at any tier arising from unforeseeable causes beyond the control and without the fault

that "[t]he Contractor, within days (10 days unless otherwise indicated) from the beginning of such delay (unless extended by the Contracting Officer) notifies [HUD's] Contracting Officer in writing of the causes of delay." *Id*. If Parkcrest were to satisfy these requirements, then the General Conditions required HANO to analyze Parkcrest's notification according to the following provision:

> The Contracting Officer shall ascertain the facts and the extent of the delay. If, in the judgment of the Contracting Officer, the findings of fact warrant such action, time for completing the work shall be extended by written modification to the contract. The findings of the Contracting Officer shall be reduced to a written decision which shall be subject to the provisions of the Disputes clause of this contract.

*Id*.

As described above, it is undisputed that the Project was supposed to be completed by September 14, 2014[7] and that the work was not complete by that date. It is also undisputed that Parkcrest only sent one written notification of delay on September 12, 2014, a mere two days before the Project was supposed to be complete. (Rec. Doc. 1-8 at 1.) The letter stated that the Project was delayed due to multiple factors outside Parkcrest's

---

or negligence of both the Contractor and the subcontractors or suppliers.
(Rec. Doc. 1-18 at 2.)

[7] The parties initially set the completion date as July 27, 2014. But in a "Contract Amendment/Change Order" signed by HANO's project manager on October 7, 2013, the completion date was extended by forty-nine days. (*See* Rec. Doc. 237-4 at 5.)

control, namely: "Entergy redesign of the electrical infrastructure, delays in the electric power pole relocation, electrical infrastructure not being complete, redesign and approval of the sewer and water connections, and coordination issues." *Id.* Because this letter was delivered to HANO more than ten days from the beginning of all said delays, HANO argues that Parkcrest failed to comply with the contract.

## B. Analysis

Although Parkcrest did not strictly comply with the written notification requirement, summary judgment is not warranted. In its briefing, Parkcrest identifies five separate issues that caused delays, one of which is the supply of permanent power infrastructure to the Project worksite.[8] Parkcrest alleges, and HANO does not dispute, that HANO was responsible for contracting with Entergy to design and construct the underground electrical infrastructure for the Project. Parkcrest also contends that the progress of this electrical infrastructure was discussed on a regular basis during the weekly construction progress meetings,

---

[8] The other four issues that Parkcrest alleges delayed its progress on the Project are: 1) delay related to site lighting; 2) delays in obtaining accounts for gas meters which were installed by Entergy; 3) issues related to roof design and ventilation; and 4) a design change made to the sewer system. Parkcrest provides evidence that HANO was aware of all these delays. Because Parkcrest provides the most evidence in support of its assertion that HANO was aware of delays related to the installation of the electrical infrastructure, the Court focuses on that alleged cause of delay.

and minutes from the meetings support this argument.[9]  Parkcrest

argues that it relied on HANO to take certain steps necessary to

install the underground electrical infrastructure and that

Parkcrest had no control over the progress of the installation.

On June 12, 2014, HANO's project manager, Hollie DeHarde,

sent what appears to be an internal HANO email titled "Florida –

Entergy Underground Utility Work." (Rec. Doc. 253-2 at 15.)  In

the email, Ms. DeHarde stated that HANO was "having issues with

Entergy relative to starting underground utility work" at the

Project site.  Ms. DeHarde then asked if there was anyone "at

Entergy with whom HANO could discuss how critical starting the

underground work at Florida is and the impact continued delays are

having on the construction schedule[.]" *Id.*   In another email

sent to an employee at Entergy on June 18, 2014, Ms. DeHarde

stated, "The situation is becoming critical with regard to the

construction schedule." *Id.* at 17.

On July 7, 2014, Ms. DeHarde and Patrick Kennedy sent an

internal memorandum titled "Entergy" which purported to provide a

"recap of meetings, discussions and communications" between HANO

and Entergy regarding the Project. *Id.* at 13.  The memorandum

---

[9] Meeting minutes from as early as July 3, 2013 include references to "Entergy Work." (Rec. Doc. 253-6 at 1) ("S. Saraff clarified that T-poles will be in place. The service call to Entergy has been made. As of this meeting, there is no power to the construction site.")

identifies a list of Entergy-related delays experienced by HANO, and concludes:

> The contractor's deadline for Entergy to start the infrastructure work, while finishing within the scheduled completion date was June 17, 2014. As of today, July 07, 2014, the project is 21 days behind schedule. *The contractor is unable to proceed with certain aspects of the project without infrastructure on site.*

*Id.* at 14 (emphasis added). This memorandum and the above-referenced emails provide persuasive evidence that HANO was aware of the delays related to the underground electrical infrastructure well before September 12, 2014. A thorough reading of section 32 of the General Conditions reveals that the purpose behind the written notice requirement is to apprise the public housing authority of the delay's existence and its cause. (*See* Rec. Doc. 1-18 at 2.) This purpose becomes clear when reading the procedures set forth in the General Conditions for determining whether a delay is excusable. *Id.* The notification requirement exists in order to allow the public housing authority's Contracting Officer an opportunity to "ascertain the facts and extent of the delay." *Id.* Here, Parkcrest and Liberty have provided sufficient evidence to demonstrate that HANO was aware of the delays and their cause and that HANO had the opportunity to ascertain the facts surrounding the delays.

The written notice requirement of a contract may be waived when "the consistent actions of the two parties" lead to such a conclusion. *Nat Harrison Assocs., Inc. v. Gulf States Utilities Co.*, 491 F.2d 578, 583 (5th Cir. 1974) (quoting *Pamper Corp. v. Town of Marksville*, 208 So. 2d 715 (La. 3 Cir. App. 1968)). The facts in this case suggest that such a waiver occurred here. HANO was aware of problems with the electrical grid at least as early as July 13, 2013 and was reminded of these problems on a weekly basis during the progress meetings. Thus, it suffered no prejudice based on Parkcrest's failure to comply with the General Conditions' strict written notification requirement. HANO is not entitled to stipulated damages and to the dismissal of all of Liberty and Parkcrest's delay claims based on Parkcrest's failure to notify when HANO was fully aware of the delay. *See* 4A Bruner & O'Connor Construction Law § 15:71 (noting that "an owner's right to timely notice may also be deemed waived if the owner in fact was aware of the condition, conducted its own investigation into the merits of the claim without raising lack of timely notice, or cannot prove that it was prejudiced by lack of timely notice"). Finally, all cases in Louisiana and this district to have required strict compliance with written notice requirements dealt with instances where a contractor failed to comply with a contract's requirement that the contractor provide written notice of a claim within a

particular time period. *See Hartford Cas. Ins. Co. v. MDI Const.,*
*L.L.C.*, No. CIV.A. 10-4369, 2012 WL 4970210, at *2 (E.D. La. Oct.
17, 2012) (dismissing the contractor's claims when it failed to
comply with the contract's requirement that all claims be initiated
within twenty-one days after the claimant recognizes conditions
giving rise to the claim); *Guinn Bros., LLC v. Jones Bros. of*
*Tennessee*, 287 F. App'x 298, 302 (5th Cir. 2008) (same result when
the contract required the contractor to provide written notice of
any claims within one week of the event or condition upon which
the claim was to be made and the contractor did not comply); *Meaux*
*v. S. Const. Corp.*, 159 So. 2d 156, 158 (La. App. 3 Cir. 1963).
By contrast, Parkcrest here did not violate a requirement that it
provide written notice of a claim; rather, it failed to comply
with a requirement to provide written notice of the cause of the
delay in order have it deemed excusable. This distinction is
sufficient to render these above-referenced cases inapplicable,
and the motion must be denied.

## II. Liberty and Parkcrest's Motions for Partial Summary Judgment on the Issue of HANO's Damages arising out of Work Completed by Colmex

Liberty and Parkcrest argue that any damages they potentially
owe to HANO should not be based on the amount that HANO agreed to
pay Colmex to complete the Project. Liberty and Parkcrest argue

that HANO violated the Louisiana Public Bid Law, Louisiana Revised Statutes § 38:2211, *et seq.*, by accepting Colmex's bid, which used the wrong unit price form. Because of this violation, Liberty and Parkcrest argue that any damages to which HANO may be entitled should be limited to quantum meruit.

There is no genuine dispute that HANO violated the Public Bid Law when it accepted Colmex's bid to complete the Project. Louisiana Revised Statute § 38:2212(A)(1)(a) requires a public entity such as HANO to "advertise[] and let by contract to the lowest responsible and responsive bidder who bid according to the bidding documents as advertised, and no such public work shall be done except as provided in this Part." This statute requires that a bid be in strict compliance with the advertisement for the bid, and no provision stated in the advertisement for bid may be waived by the public entity. *Hamp's Const., L.L.C. v. City of New Orleans*, 2005-0489 (La. 2/22/06), 924 So. 2d 104, 110 (noting that "the public entity should not include any requirements in its advertisement for bids or bid form that it considers insignificant or waivable, because once included, these requirements are non-waivable as a matter of law"). Any contract entered into in violation of the Public Bid Law is "null and void." § 38:2220(A).

After Liberty and Parkcrest were removed from the Project, HANO issued an invitation for bids to complete the Project on

August 12, 2016. This bid invitation instructed all bidders to break down the pricing of their bids into separate unit prices using a Unit Price Form ("original Unit Price Form"). The bid invitation also stated a public bid range of $1.3 to $1.7 million. On September 1, 2016, HANO issued an addendum in connection with the Bid Documents which included a "Revised Unit Price Form" and instructed all bidders to use the Revised Unit Price Form rather than the original Unit Price Form. Despite this directive, Colmex used the Original Unite Price Form in its bid. As a result, Colmex included a price for three items that were not listed in the Revised Unit Price Form, which accounted for $160,450.00 in unrequested bidding.[10] On October 4, 2016, HANO and Colmex entered into the Completion Contract at Colmex's requested price of $1.7 million and on November 16, 2016, Colmex was directed to proceed with the work. Because Colmex used the wrong Unit Price Form, its bid was defective. Thus, there is no question that HANO violated the Public Bid Law by accepting Colmex's defective bid.

But this is not the end of the inquiry. Section 2220 provides a framework for "the attorney general, or any interested party" to have a contract that violates the Public Bid Law deemed null. That statute provides:

---

[10] Colmex included the following unit prices: $890.00 to "Remove and Adjust Existing Cleanout and Concrete Pad to New Grade"; $128,040.00 to "Add Fill, Regrade Area to Provide Positive Drainage and Re-Sod"; and $31,520.00 to "Remove, Replace Existing Light Pole Base and Re-Install Light Poles."

> The district attorney in whose district a violation of this Part occurs, the attorney general, or any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.

§ 38:2220(B) (amended 1990). Although the statute does not provide a prescriptive period within which a movant must request relief, Louisiana courts have put outer limits on when such an action is timely. HANO argues that the motions filed by Liberty and Parkcrest are not timely and should be denied. The Court agrees.

The seminal case on the timeliness requirement under section 2220 is *Airline Construction Company, Inc. v. Ascension Parish School Board*. 568 So. 2d 1029 (La. 1990). In *Airline*, the Louisiana Supreme Court stated that "an unsuccessful bidder on a public contract who wishes to obtain relief because of the rejection of its bid must seek injunctive relief at a time when the grounds for attacking the wrongful award of the contract were known or knowable to the bidder and when corrective action as a practical matter can be taken by the public body." *Id.* at 1035. The court also noted that "an unsuccessful bidder should not be allowed to sit on its knowledge of the violation" until so much time has passed that the public agency can no longer remedy it. *Id*. at 1034-35. Although *Airline* was decided when section 2220(B)

18

only explicitly recognized the right to move for injunctive relief,[11] courts have applied its timeliness requirements to the statute as it currently exists. *See MBA Med., Inc. v. Jefferson Par. Hosp. Serv.*, 97-997 (La. App. 5 Cir. 1/27/98), 707 So. 2d 467, 470 (noting that *Airline*'s "rule of law has been applied to the statute as amended"); *Webb Const., Inc. v. City of Shreveport*, 27,761 (La. App. 2 Cir. 12/6/95), 665 So. 2d 653, 656 ("We do not read the 1990 amendment to R.S. 38:2220 B as excusing an unsuccessful bidder from the necessity of taking prompt action to remedy an alleged violation of public contracts law.")

There is no bright line rule for what constitutes timeliness and it "is necessarily a fact-specific inquiry." *Gen. Elec. Co. v. W. Feliciana Par. Hosp. Serv. Dist. No. 1*, No. CV 16-449-JWD-RLB, 2016 WL 7007504, at *14 (M.D. La. Nov. 29, 2016). Courts generally look to "the diligence of the party challenging the bid" and the extent to which the contract under attack has been completed. *Id.* at *11. The Louisiana First Circuit Court of Appeal found an unsuccessful bidder's petition for preliminary

---

[11] When Airline was decided, La. Rev. Stat. 38:2220(B) provided:

> The district attorney in whose district a violation of this Part occurs, the attorney general or any interested party possesses a right of action to bring suit for appropriate injunctive relief in the district court to nullify a contract entered into in violation of this Part.

The Statute was amended in 1990 by Act No. 869.

injunction to be untimely when it was filed six months after the formal notice of a "short-term contract" award. *Hartman Enterprises, Inc. v. Ascension-St. James Airport & Transp. Auth.*, 582 So. 2d 198, 201 (La. 1 Cir. Ct. App. 1991). In that case, the project was over ninety percent complete when the hearing for the injunction took place. *Id.* at 200. Another state appellate court found that the district court was not unreasonable in sustaining an exception of prescription when the unsuccessful bidder filed suit eleven months after it learned that the contract had been awarded. *Executone Sys. Co. of La. v. Jefferson Par. Hosp. Serv. Dist. No. 2 for Par. of Jefferson*, 15-569 (La. App. 5 Cir. 2/24/16), 186 So. 3d 1210, 1217. There, the unsuccessful bidder's untimely request for injunctive relief was filed after the first phase of a two-phase project was complete and work on the second phase was under way. *Id.; see also Ramelli Grp., L.L.C. v. City of New Orleans*, 2008-0354 (La. App. 4 Cir. 10/22/08), 997 So. 2d 612, 617-18 (holding that a losing bidder's petition to have city contract nullified was untimely when it waited eight months from the awarding of the contract before filing suit). In cases where the work agreed to in the contract under attack is either totally or nearly fulfilled, courts tend to find actions to nullify the contract untimely. *See, e.g., Percy J. Matherne Contractor, Inc. v. Grinnell Fire Prot. Sys. Co.*, 915 F. Supp. 818, 824 (M.D. La.

1995) (finding an action attacking the validity of a contract unreasonable when the project was seventy-eight percent complete); *see also Airline*, 568 So. 2d at 1031 (same result when the public entity asserted that the project was substantially complete by the time the plaintiff filed suit).

In this case, HANO issued its first invitation for bids to complete the Project on August 12, 2016 and issued its addendum on September 1, 2016. On October 4, 2016, HANO and Colmex entered into a contract for Colmex to complete the Project and on November 16, 2016, Colmex was directed to proceed with the work. Colmex has performed under the contract and on March 25, 2017, HANO issued a certificate of substantial completion. Neither Liberty nor Parkcrest claim that they were unaware or could not have determined that Colmex had been awarded the contract or that the bid should have been rejected. *See Airline*, 568 So. 2d at 1034 (noting that the unsuccessful bidder "did nothing" for approximately nine months after the contract was awarded "although there was no apparent reason why plaintiff did not know or could not have determined that Picou's bid . . . should have been rejected"). Moreover, the work agreed to pursuant to the contract between HANO and Colmex is now complete. Accordingly, application of the *Airline* analysis leads to the clear conclusion that Liberty and

Parkcrest's motions to have the contract deemed null are not timely.

Liberty and Parkcrest argue that even if their motions are not timely under the *Airline* analysis, the contract between Colmex and HANO was an absolute nullity and therefore an action to nullify it cannot prescribe. Some legal authority exists in support of this proposition. A contract made in violation of the Public Bid Law is absolutely null and void. *Pittman Const. Co. v. E. Baton Rouge Par.*, 493 So. 2d 178, 190 (La. App. 1 Cir. 1986). "A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed." La. Civ. Code art. 2030. Furthermore, "[n]ullity may be raised at any time as a defense against an action on the contract, even after the action for annulment has prescribed." La. Civ. Code art. 2032. Thus, Liberty and Parkcrest argue that the rule for prescription in Civil Code article 2032 is incompatible with the rule set out by *Airline* and its progeny. Because Liberty and Parkcrest bring these motions pursuant to both Civil Code article 2032 and Louisiana Revised Statute § 38:2220(B), they argue that the rule set out in Civil Code article 2032 should prevail.

A Louisiana circuit court has recently addressed this argument. In *Executone Systems Company of Louisiana, Inc. v.*

*Jefferson Parish Hospital Service District No. 2 For the Parish of Jefferson*, the Louisiana Fifth Circuit addressed a case where the unsuccessful bidder on a public contract sought injunctive relief, a declaratory judgment, damages, and other relief. 186 So. 3d at 1212. The district court found that the plaintiff's claims were untimely. *Id.* at 1214. On appeal, the plaintiff argued that the contract attacked in the suit was an absolute nullity and therefore any action to have it declared null would not prescribe. *Id.* The circuit court first applied the *Airline* analysis and found no error in the trial court's determination that the plaintiff was untimely in seeking injunctive relief. *Id.* at 1217. The court then proceeded to determine whether a claim that is subject to the prescriptive rule established by *Airline* and its progeny could also be subject to the prescriptive rule of Civil Code article 2032 and, thus, would not prescribe. The court decided that the plaintiff had "standing to bring its nullity claim not just pursuant to La. C.C. art. 2030, but rather pursuant to both La. C.C. art 2030 *and* La. R.S. 38:2220." *Id.* at 1219 (emphasis in original).

However, the *Executone* court noted that the plaintiff in that case was an unsuccessful bidder to a public bid and not a party to the contract. *Id.* Because the plaintiff was not a party to the contract, the court held that "the timeliness standard associated

with [plaintiff's] claims against defendants brought pursuant to the public bid law also applies to [plaintiff's] nullity claim against these same defendants." *Id.* Subsequently, a federal district court has applied *Executone*'s logic to a very similar case. *Gen. Elec. Co.*, 2016 WL 7007504, at *18. In *General Electric Company v. West Feliciana Parish Hospital Service District No. 1*, the court posited that "[s]urely the Louisiana Supreme Court was mindful of Civil Code articles 7 and 2032 at the time it rendered its ruling in *Airline* . . . ." *Id.* Ultimately, the court held that the plaintiff's nullity claim was "bound by the timeliness constraints of *Airline*." *Id.* This Court is persuaded by the rationale set forth in *Executone* and *General Electric Company*. Accordingly, the prescriptive period applicable to the motions filed by Liberty and Parkcrest is set forth by *Airline* and its progeny and not by Civil Code article 2032.

Liberty and Parkcrest also argue that the standard for prescription set out by *Airline* and its progeny is not applicable to the instant motions because Liberty and Parkcrest are challenging the contract as a defense to HANO's breach of contract claims rather than as a cause of action. Liberty and Parkcrest argue that Civil Code article 2032 is the applicable prescriptive rule for these motions because it states that nullity may be raised

as a defense against an action on the contract "even after the action for annulment has prescribed."

The Court acknowledges that these motions are indeed different than almost all other actions brought under section 2220(B). Nearly every other cited case entails an action brought by an aggrieved unsuccessful bidder to a public bid process. *See Percy J. Matherne Contractor, Inc.*, 915 F. Supp. at 823 (finding that a movant had "dubious standing" when "unlike the usual case, it is not a prime contractor claiming to be the low bidder who was improperly denied a contract by the alleged Public Bid Law violation"). However, it is not apparent to the Court why this distinction should place the instant motions outside the constraints of the *Airline* rule. Parkcrest and Liberty have not identified any case to support their theory, nor has the Court identified any. They are not entitled to avoid the constraints of the *Airline* rule simply because they wish to bring their motions as a defense rather than as a cause of action. The very reason that Liberty and Parkcrest argue the contract with Colmex is null and void is that it violates the Public Bid Law. It would be counter-intuitive, then, to allow Liberty and Parkcrest to bring a nullity action on the ground that it violates the Public Bid Law and then to eschew the timeliness requirements that the Louisiana Supreme Court has explicitly set out for such a claim. This is

especially true because, just as in *Executone* and *General Electric Company*, neither Liberty nor Parkcrest were a party to the contract they wish to have declared null. For all these reasons, the motions by Liberty and Parkcrest are denied.

### III. HANO's Motion for Partial Summary Judgment on the Issue of Substantial Completion

In this motion, HANO seeks a declaration from the Court that both Parkcrest and Liberty failed to achieve substantial completion of the Prime Contract. HANO argues that the architect on the Project had the authority to determine whether and when substantial completion was achieved. Thus, HANO argues that the architect's refusal to grant substantial completion was final and forecloses any further debate on the issue. HANO also argues that the facts in the record demonstrate that substantial completion was not achieved. In particular, HANO claims that whether certificates of occupancy were granted on the project is entirely irrelevant to determining whether substantial completion occurred. HANO argues that the Project entailed much more than building housing and therefore the fact that the City of New Orleans Department of Safety and Permits ("City") granted certificates of occupancy has no bearing on whether substantial completion of the entire Project was achieved.

In their oppositions, Liberty and Parkcrest argue that the Project was substantially complete on December 2015 when the City issued certificates of occupancy on the residential units. Alternatively, they argue that substantial completion had been attained on or before June 30, 2016, when they assert that Liberty was terminated from the Project. Liberty and Parkcrest contend that the architect's determination on substantial completion is reviewable and is not the final word on the issue. They argue that whether substantial completion has been achieved is a factual question to be determined by the court. Further, they argue that a factual dispute exists over whether substantial completion was achieved according to the terms of the contract and that summary judgment should therefore not be granted. Finally, Liberty and Parkcrest claim that because the Project's architect was not a licensed architect, he lacked the authority to make any determination on substantial completion.

## A. Relevant Factual Background

On May 17, 2016, Liberty informed HANO that it considered the Project substantially complete and that it intended to remove its trailer from the Project on May 23, 2016 and end its builder's risk insurance coverage on May 31, 2016. On May 20, 2016, HANO objected to Liberty's abandonment, prompting Liberty to maintain

its insurance for the Project and security at the site until June 15, 2016.

On June 9, 2016, Mark Clayton sent HANO a letter stating that he was unable to grant substantial completion on the Project because he stated that multiple deficiencies still existed. (Rec. Doc. 230-15.) Clayton was an employee of Perez, APC, which was the architect for the Project. Clayton served as Perez, APC's primary project manager for the Project. In his June 9, 2016 letter, Clayton listed multiple items that he claimed were either incomplete or unacceptable. His letter included an attachment of many punch lists, each of which was stamped "NOT APPROVED FOR SUBSTANTIAL COMPLETION."

Liberty decided to maintain its insurance for the site until July 1, 2016 in order to address the issues raised by Clayton. But Liberty left the site on July 1, 2016 and HANO still found that the Project needed work to be complete. As a result, HANO entered into the Completion Contract with Colmex to perform all necessary work on the Project. Colmex was granted a certificate of substantial completion on March 25, 2017.

## B. Who Determines Substantial Completion?

The first issue presented by this motion is who decides whether substantial completion has been met. HANO argues that its architect had the authority to determine whether substantial

completion had been achieved. Thus, HANO argues that as a matter of contract, the architect's determination that the Project was not substantially complete is final. By contrast, Parkcrest argues that whether substantial completion has been achieved is a matter for the court to decide.

The Public Bid Law provides the following definition of substantial completion:

> "Substantial completion" is defined for the purpose of this Chapter, as the finishing of construction, in accordance with the contract documents as modified by any change orders agreed to by the parties, to the extent that the public entity can use or occupy the public works or use or occupy the specified area of the public works for the use for which it was intended.

La. Rev. Stat. § 38:2241.1(B). It is clear from this provision that the definition of substantial completion is determined by the contract itself. In this case, the procedure for determining substantial completion is set out in section 20(j) of the General Conditions, which states:

> The Contractor shall notify the Contracting Officer, in writing, as to the date when in its opinion all or a designated portion of the work will be substantially completed and ready for inspection. If the Architect determines that the state of preparedness is as represented, the [public housing authority] will promptly arrange for the inspection. Unless otherwise specified in the contract, the [public housing authority] shall accept, as soon as practicable after completion and inspection, all work required by the contract or that portion of the work the Contracting Officer determines and designates can be accepted separately. Acceptance shall be final and conclusive except for latent defects, fraud, gross mistakes amounting to fraud, or the [public

> housing authority]'s right under any warranty or guarantee.

(Rec. Doc. 1-18 at 8.) This provision sets forth a three-step procedure. The first step is for the contractor to notify the public housing authority's contracting officer in writing when the contractor believes substantial completion has been achieved. The second step is for the architect to make a determination as to whether he concurs that substantial completion has been achieved. The third step only occurs if the architect believes that substantial completion has been achieved. In that case, the public housing authority is to promptly arrange for inspection. If the architect determines that substantial completion has not been achieved, then the process never proceeds to the third step. Thus, the architect's determination that a project has not achieved substantial completion is determinative as to whether the public housing authority will arrange for inspection and, ultimately, grant substantial completion.

Here, the architect for the Project was Perez, APC, and Perez, APC's primary project manager was Mark Clayton. It is undisputed that on June 9, 2016, Clayton informed HANO that he was unable to grant substantial completion to the Project because of his determination that multiple deficiencies existed over the Project. Accordingly, it is clear that HANO had the authority to determine whether the Project had reached substantial completion and it is

equally clear that HANO made this determination in compliance with procedure set forth in section 20(j) of the General Conditions.

However, Louisiana courts have often reiterated that "whether substantial completion has occurred is a factual determination to be made by the trial court." *Utley-James of Louisiana, Inc. v. State, Div. of Admin., Dep't of Facility Planning & Control*, 94-2504 (La. App. 1 Cir. 10/6/95), 671 So. 2d 473, 475; *see also O & M Const., Inc. v. State, Div. of Admin.*, 576 So. 2d 1030, 1035 (La. App. 1 Cir. 1991) (determining whether substantial completion occurred in a public building contract and stating that "substantial performance . . . is a factual determination to be made by the trial court); *All Seasons Const., Inc. v. Mansfield Hous. Auth.*, 40,490 (La. App. 2 Cir. 1/25/06), 920 So. 2d 413, 416; *Cent. Elec. Co. of Alexandria v. England Econ. & Indus. Development Dist.*, 2012-302, 2012 WL 5933040, at *2 (La. App. 3 Cir. 11/28/12) (unpublished) ("The determination of whether there has been "substantial completion" on a public works project, as defined in La.R.S. 38:2241.1, is a question of fact left to the broad discretion of the trier of fact.")  Thus, a determination made by HANO in compliance with the General Conditions is not beyond review by this Court.

Two Louisiana cases support the conclusion that a court can determine whether substantial performance has occurred after the

owner has already made a determination.[12]   In *Allen v. A & W
Contractors, Inc.*, the plaintiff building owner entered into a
contract with a contractor to build a second floor addition to the
building.  433 So. 2d 839, 839 (La. App. 3 Cir. 1983).  The contract
stated that: "The Date of Substantial Completion of the Work or
designated portion thereof is the Date certified by the Architect
when construction is sufficiently complete, in accordance with the
Contract Documents."  *Id.* at 840.  The architect supervising the
project prepared a certificate of substantial completion and set

---

[12] HANO refers the Court to *Plaquemines Parish Government v. Burk-Kleinpeter
Inc.*, 2015-1152, 2016 WL 915393 (La. App. 4 Cir. 3/9/16) (unpublished) in
support of its contention that the procedure for determining the substantial
completion date is simply a matter of contract.  In that case, the defendant
contractor filed an exception of peremption on the parish government's claims,
and the peremptive period began to run on the date of substantial completion.
*Id.* at *2; *see also* § 38:2189.  The court was therefore tasked with determining
the date of substantial completion in order to set the date from which the
peremptive period began to run.  The contract between the parish government and
the contractor stated that the design engineer had the authority to select the
date of substantial completion.  *Id.* at 3.  The design engineer eventually set
a date for substantial completion.  However in opposition to the exception of
peremption, the parish government argued that the date of substantial completion
was actually later than the date set by the design engineer.  Although the court
acknowledged "that the public owner should have some input into the selection
of the date of substantial completion," it found that the parish government had
"voluntarily ceded its input" to the design engineer.  *Id.*  The court noted
that "there was no apparent disparity in the parties' bargaining power and the
authority to designate the date of substantial completion did not inherently
violate public policy."  *Id.*  Accordingly, the court found that the date of
substantial completion for purposes of peremption was set by the parties in the
contract.

The *Plaquemines Parish Government* court was careful to limit the
application of its holding.  It stated that "the right to select the substantial
completion date does not deprive [the parish government] or any public entity
of the right to file suit against the contractor for any perceived failure to
perform the contract terms.  The date's selection simply limits the right to
file suit against the contractor to within five years of the date of substantial
completion." *Id.* at 5.  This Court's reading of *Plaquemines Parish Government*
is that its holding is not to be expanded outside the context of setting the
date for the peremptive period.

the date as April 23, 1981. *Id*. The case eventually was sent to arbitration and the arbitrator determined that the date of substantial completion was March 2, 1981. *Id*. The plaintiff appealed, arguing that the arbitrator exceeded his powers but the court disagreed. *Id*. at 841. The court acknowledged that the contract provided that the date of substantial completion was to be established by the architect. *Id*. Nevertheless, the court concluded: "We do not consider this provision to be sacrosanct if the facts show substantial completion at a date earlier than that certified by the owner's architect." *Id*.

In *All Seasons Construction, Inc. v. Mansfield Housing Authority*, the Louisiana Second Circuit held that the trial court was not manifestly erroneous when it found that the contractor on a public bid project achieved substantial completion on a different date than the date determined by the local housing authority. 40,490 (La. App. 2 Cir. 1/25/06), 920 So. 2d 413, 418. In *All Seasons*, the contractor informed the housing authority's architect in writing that the project was complete except for punch list items not yet received. *Id*. at 415. In the letter dated April 18, 2000, the contractor requested a certificate of substantial completion as of that date. *Id*. The housing authority's architect responded that he could not certify that the project was substantially complete as of that date because work still needed

to be complete. *Id*. Instead, the architect issued a certificate of completion for the project on August 18, 2000. *Id*. The contractor disputed the date that substantial completion had been achieved. *Id*. at 416. After hearing all the evidence, the trial court determined that substantial completion occurred on April 28, 2000, a date not identified by either the contractor or the housing authority. *Id*. The appellate court affirmed the trial court's determination, finding that the record demonstrated "the majority of the work had been performed on time." *Id*.

These cases are in line with the rule that substantial completion is to be determined by the trial court. *See also Woodrow Wilson Const. Co. v. Fashion Cafe, L.L.C.*, 99-0677 (La. App. 4 Cir. 10/20/99), 745 So. 2d 763, 766 (holding that "although the record contains a certificate of substantial completion," it also contained evidence that a condition in the agreement had not been fulfilled and therefore summary judgment was not appropriate). The Court is satisfied that it has the authority to review HANO's determination that substantial completion had not been achieved under the terms of the Prime Contract.

**C. Whether Substantial Completion was Achieved Under the Terms of the Prime Contract**

As mentioned above, substantial performance has been defined under the Public Bid Law as "the finishing of construction, in

accordance with the contract documents as modified by any change orders agreed to by the parties, to the extent that the public entity can use or occupy the public works or use or occupy the specified area of the public works for the use for which it was intended." § 38:2241.1(B). Substantial completion, sometimes referred to as substantial performance, can be achieved even when deficiencies exist. *All Seasons*, 920 So. 2d at 416 (citing *O & M Const., Inc.*, 576 So. 2d at 1035); *see also Urban's Ceramic Tile, Inc. v. McLain*, 47,955 (La. App. 2 Cir. 4/10/13), 113 So. 3d 477, 482. The contractor bears the burden of proving that substantial completion has been achieved, and the owner "bears the burden of proving the existence and nature of alleged defects." *Superior Derrick Servs., L.L.C. v. LONESTAR 203*, 547 F. App'x 432, 439 (5th Cir. 2013). Courts look to the following factors when determining whether substantial performance has been achieved: "the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the owner of the work performed." *O & M Const., Inc.*, 576 So. 2d at 1035.

HANO presents evidence to support its claim that neither Parkcrest nor Liberty achieved substantial completion by the time Liberty left the Project worksite. First, HANO points to an inspection conducted by Clayton of one of the buildings on December

17, 2015. (Rec. Doc. 230-27). In a letter Clayton sent to HANO on December 30, 2015, Clayton stated that he identified numerous items in his December 17, 2015 inspection that prevented him from certifying that substantial completion had been achieved. Additionally, Clayton's June 9, 2016 letter to HANO identified numerous deficiencies, including: "accessibility issues, non-code-compliant stairs and railings, non-working HVAC systems, non-working electrical systems, non-working water systems, cracking concrete sidewalks, incorrectly installed balcony concrete, missing project documents, manuals, reports, etc., and the continuing failure of Parkcrest to provide evidence of final acceptance of the project streets and infrastructure by the City of New Orleans and the Sewerage and Water Board of New Orleans." (Rec. Doc. 230-15.) HANO also relies in this motion on a letter issued by Integrated Logistics Support Incorporated ("ILSI"). (Rec. Doc. 230-33.) ILSI was a subcontractor of Perez, APC that served as the engineer of record for the street, water, and sewerage portions of the Project (Rec. Doc. 230-3 at 10.) On June 22, 2016, ILSI sent a letter to Perez, APC stating that it did "not find the civil site work substantially complete at this time." (Rec. Doc. 230-33.) This letter included its own separate punch list identifying nine pages of items in need of further attention. *Id.*

Liberty and Parkcrest submit evidence that substantial completion had been achieved, either by December 2015 or June 2016. They point fundamentally to the fact that by December 2015, the City had granted certificates of occupancy for each of the units in the Project. (*See* Rec. Docs. 252 at 9; 252-1 at 14; 252-5). Each certificate warrants that the work was "completed in compliance with the applicable provisions of the New Orleans Amendments to the International Building Code and Comprehensive Zoning Ordinance." (*See* Rec. Doc. 252-5.) Liberty and Parkcrest submit the report of their expert, architect Jerry Watts, which states that substantial completion was achieved when the certificates for occupancy were granted because the Project could then be used for its intended purpose. (Rec. Doc. 252-3.)

Liberty and Parkcrest also use pay applications from the Project to demonstrate that the vast majority of the work was complete by June 30, 2016. They use the amount of money they were paid by HANO to reach this conclusion. HANO ultimately paid Parkcrest $10,763,763.76 of the $11,394,172.02 contract price. (Rec. Doc. 252-2 at 6.) These payments were certified by Perez, APC and approved by HANO. In each certification of payment, Perez, APC attested to HANO that "the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT

CERTIFIED." (*See* Rec. Doc. 252-6 at 3.) The amount paid to Parkcrest constitutes 94.5% of the total contract price; thus, Liberty and Parkcrest argue that Parkcrest completed 94.5% of the Project in accordance with the Contract. Liberty and Parkcrest further argue, based on their expert's report, that when the amount of work that was complete but not approved for payment is added to the total, the Project could be considered 98% complete by that period.

Liberty and Parkcrest also take issue with the punch lists issued by Perez, APC on June 9, 2016 upon which HANO relies. The expert report of Jerry Watts states that the punch lists were "excessive and redundant." The expert report further states that many items on the punch list had been corrected prior to the time that the punch lists were actually received. Watts also stated in his expert report that the most important items listed in the June 9, 2016 punch lists were either corrected "or in the process of being corrected" by June 30, 2016. Liberty and Parkcrest point out that Clayton testified in a deposition that he would have recommended that HANO grant substantial completion if these items were addressed.[13]

---

[13] This testimony of Clayton is used as support by Liberty in its *Motion in Limine to Limit HANO's Use of Non-Red Items Regarding Substantial Completion* (Rec. Doc. 235). The Court expresses no opinion as to the merits of Liberty's motion in limine in this Order.

Finally, Liberty and Parkcrest provide evidence undermining HANO's claim that the streets and associated infrastructure had not reached substantial completion. They first attack the letter that ISLI sent to HANO on June 22, 2016 stating that it could not recommend the granting of a certificate of substantial completion. In deposition testimony, ILSI's corporate representative testified that her definition of substantial completion was not based upon whether the Project could be used for its intended purpose.[14] (Rec. Doc. 252-10 at 6.) Liberty and Parkcrest also present an email sent by an employee of the City of New Orleans Department of Public Works ("DPW") to Parkcrest dated May 10, 2016, which states that the DPW found the construction of the streets and associated infrastructure to be acceptable. (Rec. Doc. 252-9 at 6.) The email instructs Parkcrest to "accept this email as DPW's final acceptance of the street pavement, catch basins, sidewalks, curbs, and ADA ramps within your project boundaries." *Id*. Deposition testimony from the DPW employee who wrote the email confirms that the email was meant to convey that Parkcrest's work on the street pavement, catch basins, sidewalks, curbs and ADA raps within the

---

[14] During the deposition, ISLI's corporate representative was asked about the definition of substantial completion she "had in [her] mind" when she stated that she could not recommend the Project for substantial completion. In particular, she was asked whether "there [was] ever an analysis that you made or a consideration you gave to if the thing you're looking at or talking about can be used for its intended purpose?" ISLI's corporate representative responded: "I did not look at it from that standpoint." (Rec. Doc. 252-10 at 6.)

Project boundaries met the DPW's standards.  *Id*. at 4-5.  Based on this evidence, Liberty and Parkcrest argue that the street and infrastructure work was substantially complete.

Liberty and Parkcrest have presented ample evidence to create a genuine issue of material fact as to when and whether substantial completion was achieved in accordance with the contract.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Partial Summary Judgment on the Issue of Substantial Completion* **(Rec. Doc. 230)** filed by HANO is **DENIED.**

**IT IS FURTHER ORDERED** that the *Motions for Partial Summary Judgment on the Issue of HANO's Damages Arising Out of Work Completed by Colmex* **(Rec. Docs. 236 and 247)** filed by Liberty and Parkcrest are **DENIED.**

**IT IS FURTHER ORDERED** that the *Motion for Partial Summary Judgment to Dismiss All Delay Claims* **(Rec. Doc. 237)** filed by HANO is **DENIED.**

New Orleans, Louisiana this 8th day of August, 2017.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE