# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PARKCREST BUILDERS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO:  15-01533 c/w<br>16-14118<br>16-15849** |
| **HOUSING AUTHORITY OF NEW ORLEANS (HANO)** | **SECTION: "J" (4)** |

## ORDER

Before the Court is **Liberty Mutual Insurance Company's Motion for Sanctions (R. Doc. 366)** for the Housing Authority of New Orleans' alleged failure to comply with this Court's Order from June 1, 2017. Rec. Doc. 206.

## I.  Background

### A.  Factual Summary

This claim involves the alleged breach of an 11 million dollar construction contract for the contruction of the Florida Avenue: New Affordable Housing Unit ("the Project").  The Project began in 2013, but due to multiple delays Parkcrest Builders ("Parkcrest") was terminated as the contractor on April 10, 2015. Rec. Doc. 21.

The dispute centers on whether the construction could not be completed due to the poor performance of Parkcrest or inadequate design documents which caused delays outside of Parkcrest's control. As a result, Parkcrest filed this lawsuit contending that its termination was one for convenience, not cause. *Id*.

The Housing Authority of New Orleans ("HANO"), the owner of the housing units counterclaimed against Parkcrest and the surety, Liberty Mutual, also intervened in the claim. R. Docs. 23, 31.  HANO contends that Parkrest was obligated to deliver a total of 52 units within the contracting time which was extended by a change order to 529 days or until September 14, 2014.

HANO also claims that none of the units have been accepted as complete. As a result HANO seeks liquidated damages, claiming bad faith and compensatory damages. The matter has been hotly contested, and the discovery aggressive, involving the production of electronic documents which resulted in the subject motion being filed and the question of whether all of the documents were produced in compliance with earlier orders. The discovery scenario follows below.

**B. The Discovery Story**

While the lawsuit was filed in May of 2015, discovery did not begin in earnest until October 2016.[1] During that time, the lawyers for the parties met and agreed to a rather unrealistic discovery plan which consisted of completing written discovery by December 2016, and the first set of written discovery was not propounded until October 2016. Rec. Doc. 91-2. They also unrealistically agreed to the completion of fact depositions by Spring of 2017. *Id.*

On February 10, 2017, the parties agreed to another extension of time for HANO to respond to the first set of discovery to March 6, 2017.[2] Despite this agreement, the first Motion to Compel complete responses was filed on February 16, 2017, and regarded the inadequacy of HANO's responses to the First Set of Requests for Production of Documents. Rec. Doc. 92. The initial Motion to Compel was denied largely due to the production of documents the night before the hearing on the motion and the question of whether the production was sufficient. Rec. Doc. 107. On or about March 13, 2017, Liberty propounded its Second Set of Requests for Production of documents on HANO. This discovery sought the production of any documents that HANO relied upon in responding to the Interrogatories, all correspondences related to the project,

---

[1] It is as though HANO never got control of the discovery in this case.

[2] The first set of interrogatories sought the identity of: (1) contracts; (2) description of work performed; (3) change orders; and (4) communications with contractors and suppliers. Rec. Doc. 199-2, 10/7/16. On May 18, 2017, HANO supplemented its answers to Liberty's second set of interrogatories, asserted objections, and promised that the information would be soon forthcoming.

2

correspondence sent to or from Jennifer Adams, Kevin Oufnac, Guy Barcelona, Hollie DeHarde, and Patrick Kennedy, documents reflecting inspections performed at the request of Perez APC, HANO, New Orleans Public Works, and Liberty. Rec. Doc. 156-2.

Essentially, the requests sought everything having to do with the project whether evidencing communications, decisions, or design issues. *Id.* Interesting to the Court is that although it sought information generally, the way the requests were written the responses to some degree would overlap with the request to produce everything. The Second Requests for Production of documents were not materially different than the First Set of Request for Production of Documents, as it too sought all documents concerning the project.[3]

On April 25, 2017, Liberty filed a Motion to Compel HANO to respond to its Second Set of Interrogatories and Requests for Production of Documents. However before the hearing, the parties entered into an agreement wherein HANO would: (1) respond to the discovery on or before May 10, 2017; (2) produce all documents from 2013 to the present in response to Liberty's Second Request for Production of Documents[4] before May 17, 2017; and (3) provide a privilege log regarding those items it contends are subject to the attorney client privilege or work product doctrine. Rec. Doc 169.

---

[3] The First Set of Requests for Production of documents also sought the production of all documents regarding the alleged defects, documents evidencing communications, interactions with government agencies, to documents or payments made or outstanding on the project. It also sought the production of all documents or statements from anyone who was interviewed in connection with the project, and the production of all documents related to the project. Rec. Doc. 91-2, pp. 18-20.

[4] The Second Requests for Production of Documents sought the production of all documents responsive to the second set of Interrogatories, all correspondence related to the Project from 2012 through final completion of the project. It also sought correspondence to Greg Fortner, Jennifer Adams, Kevin Oufnac, Guy Barcelona, Hollie Deharde and Patrick Kennedy from 2012 to the end of the project, documents regarding the inspection, design deficiency, water and sewer tie-ins at Alvar and Congress Street, the alleged failure to timely inspect, the decision to terminate Parkcrest, Colmex work performed, liquidated damages, the delay in the project completion, and the status of the project.

On April 26, 2017, by email, HANO's counsel agreed that it would fully respond to Liberty's second set of Interrogatories on or before May 10, 2017 (providing all facts and the documents that support its allegations that the Project was not substantially complete as of June 29, 2016). Rec. Doc. 199-4. HANO, in the general objections section of the pleading, noted its request for an additional 30 days to respond to the second set of discovery. Rec. Doc. 199-6, 5/18/17.

After the agreement was entered into, Liberty filed a subsequent motion again seeking to compel complete responses to the Second Set of Requests for Production of Documents. Rec. Doc. 199. Liberty sought an order from the Court: (1) Limiting the responses to the pending Interrogatories; (2) Deeming HANO's objections to the Requests for Production of Documents waived; (3) Compelling HANO to fully respond to the Discovery Requests; and (4) Compelling HANO to produce the documents on its privilege log. *Id.*

Liberty continued to complain that HANO has not produced all the documents from 2013 to the present. During oral argument on the motion, HANO's counsel, Jonathan Brehm, advised the court that: (1) the documents it had not produced were primarily documents relating to emails from HANO employee Jennifer Adams; and (2) that it would produce the documents by May 31, 2017, the actual date they were in court for oral argument. Despite his representations to the court, HANO's counsel did not complete the production on May 31, 2017. Instead, at 5:50 p.m. on the day of the hearing, HANO's lawyer, by email, indicated that its third-party vendor was still working on Bates-stamping and "ocr"-ing the documents. Rec. Doc. 206. The Court extended the production deadline until 5:00 p.m. on June 2, 2017. On June 1, 2017 at 12:22 p.m., Mr. Jonathan Brehm sent a link to download the documents using Dropbox.

4

On July 31, 2017 at 6:58 p.m., Mr. Brehm sent another link to documents he identified as HANO Production No. 7, which consist of updates to the HANO Project File for the subject dispute. Rec. Doc. 366-4, Exhibit C. The next day on August 1, 2017 at 7:03 p.m., Brehm again sent a link for the download of additional documents, which consisted of updates to documents regarding the completion and corrective work, including the Project Manager's emails. Brehm indicated that the documents supplemented HANO's responses for request for production of documents evidencing Parkcrests defective work, HANO's damages, and completion of Comex's scope of work including change orders.

On August 29, 2017, Liberty filed the subject motion contending that despite the Court's order for the parties to complete its production of documents by 5:00 p.m. on Friday June 2, 2017, it failed to do so. Rec. Doc. 366-1. Liberty contends that while HANO had represented to it and this Court on June 1st that its production was complete, HANO's representation was false. R. Doc. 366-3. Liberty contends that based upon HANO's completion certification of June 1, 2017, the parties proceeded with taking various fact witness depositions in advance of the August 1, 2017 discovery deadline.

Liberty contends that the documents that were the subject of the last minute data dump largely were in HANO's possession for months, for which there is no justification for withholding until after nearly all fact depositions had been taken. Rec. Doc. 366-1, p. 1. As a result, Liberty now requests that the Court sanction HANO for its untimely production in violation of this court's order and bar HANO from using any of the documents produced either on July 31, 2017 or August 1, 2017.

HANO opposes the motion contending that it was not under an order of the Court to complete is production of documents in this matter by June 2, 2017. Rec. Doc. 372. Instead, it

contends that it was under an order to complete its responses to the Second Set of Interrogatories and Request for Production of Documents only, and that it complied with the court's order. HANO further points out that from April 10, 2017 to June 1, 2017, it had produced 44,000 pages[5] of electronic documents, that it also had done so in compliance with the courts rolling production instruction and pursuant to its obligation to supplement its responses to the First Request for Production of Documents. HANO contends that any delay in production is the result of the review process, preparing the documents for production by converting them to .tiff and having the optical character recognition analysis performed.

HANO contends it was simply complying with its duty to supplement its discovery response pursuant to Rule 26(e) and it did so regarding its productions No. 7 and 8 as soon as it learned that its earlier responses were deficient, but that they were done in compliance with the scheduling order. HANO strongly denies that its production of documents supplementing its responses to the first set of discovery is in violation of any discover order issued in this case.

## II. Standard of Review

Federal Rule ("Rule") of Civil Procedure 26 requires a party to produce non-privileged documents which are relevant to the subject matter involved in the pending action. That requirement embraces documents and information that are reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). This broad duty of disclosure extends to all documents that fit the definition of relevance for the purposes of discovery-whether the documents are good, bad, or indifferent. *Danis v. USN Communications, Inc.*, No. 98-7482, 2000

---

[5] The 44000 pages are derived from the following: Production made on April 10 and April 13, 2017, of approximately 17000 documents. Production made on May 18, 2017, of 12,400 documents responsive to the Second Set of Request for Production of Documents. The final production included the completions of its responses to the Second Set of Request for Production, including the emails under the "expanded ESI Protocol" on June 1, 2017 of another 15000 documents.

WL 1694325, at *1 (N.D. Ill., October 20, 2000). Self-reporting is, in fact, a central concept of the discovery process. The duty of disclosure finds expression in the rules of discovery, and in this Court's Rules of Professional conduct, which prohibit an attorney from suppressing any evidence that he or his client has a legal obligation to reveal or produce.

Sanctions may be imposed on a party that, without substantial justification, fails to disclose information required by Rule 26(a) or 26(e)(2). *In re September 11th Liability Insurance*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (citing Fed. R. Civ. P. 37(c)(1)). A failure to disclose under Rule 37 includes not only spoliation of evidence, but also a party's untimely production of documents and information required to be produced.

### III.    Analysis

Liberty contends that HANO should be sanctioned for failing to abide by this Court's June 2, 2017 deadline to complete discovery in accordance with "the deadline". Therefore, Liberty contends that the exclusion of HANO's untimely productions is warranted because the late production relates to the project, HANO's damages, and the scope of Colmex's work after Liberty's departure from the project. Liberty contends that it should have had these emails and documents before taking the depositions of the people who generated them; such as Mr. Barcelona, Ms. Adams and Ms. DeHarde.

Liberty contends that HANO's eighth production consisted of internal emails in which its employee Jennifer Adams contends that Parkcrest and Liberty had allowed a termite contract to lapse and HANO would seek to recover costs to remediate the alleged termite problems at the Project from Parkcrest and Liberty. Liberty contends that it should have had the benefit of this email before the deposition.

HANO contends that sanctions are not warranted as it complied with the Court's discovery deadline of August 1, 2017. It further contends that the productions of July 31, 2017, and August 1, 2017, were supplemental productions it was obligated to produce once it determined that additional documents were responsive to the First Set of Requests for Production of Documents. HANO contends that notwithstanding its compliance with the court's discovery order, its obligation to supplement all of its responses remained. HANO contends that Liberty has been aware that the damages in this case are ongoing because the Project is on-going as a result of the poor work performed by Parkcrest. Rec. Doc. 372.

HANO further contends that Liberty never filed a motion to compel the documents produced on July 31 and August 1, 2017. As a result, there was no court order that would form the basis of a sanction order under Rule 39(b)(2)(A). HANO also contends that Liberty was not deprived of questioning the witnesses it identified in its memorandum as evidenced by the fact that the same documents were produced in HANO's Production No. 5. As a result, Liberty had every opportunity to ask Mr. Barcelona, and other HANO witnesses about the documents, two days to depose Mr. Barcelona and Liberty already raised many of the issues.

The Federal Rules of Civil Procedure are clear as to the requirements for complying with discovery requests and the serious consequences for failing to do so. The court has wide latitude in determining the appropriate sanction for failure to comply with discovery. Indeed, when a party's conduct is not effectively sanctionable under an existing rule or statute, a court may rely on its inherent power to impose sanctions.

The court has the clear authority under Fed. R. Civ. P. 37(b) to sanction a party for failure to obey an order that provides or permits discovery. If a party fails to obey an order to provide or permit discovery, the court where the action is pending may issue "further just orders" including:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.[6]

The purpose of discovery sanctions are to secure compliance with the rules of discovery, deter others from violating them, and punish those who do violate them. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642-43 (1976). Typically, Rule 37(b) sanctions are not available until the court has issued a specific discovery order, orally or in writing, instructing a party to submit to discovery so it is clear that the offending party has been alerted to what is required and the potential seriousness of noncompliance. *See Halas v. Consumer Servs.,* 16 F.3d 161,164 (7th Cir. 1994); *See e.g., Shepherd v. ABC, Inc.,* 62 F. 3d 1469, 1474 ( D.C. Cir. 1995). However, the court can sanction at any time based on the court's inherent authority to sanction. *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg.*, 982 F.2d 363,368 (9th Cir. 1992). Although not all courts agree, the Fifth Circuit allows for discovery sanctions to be imposed even when there is not a total failure to respond, but the response has been so evasive or misleading or inadequate that it amounts to no response at all. *See Coane v. Ferrara Pan Candy Co.*, 898 F.3d 1030, 1031 n.1 (5th Cir. 1990)

**A. Discovery Order**

The first issue for the court to decide is whether there is a discovery order that HANO failed to comply with. The dispute centers on this Court's order of June 2, 2017. Liberty contends that the order required HANO to produce all documents from 2013 to the present that are

---
[6] Fed.R.Civ.P.37(b)(A).

responsive to the 2nd Set of Requests for Production. HANO contends that it complied with the Court's order by producing the documents on the extended deadline of June 2, 2017 such that there is no order which was violated and that Liberty did not file a motion compelling the July 31 and August 1, 2017, productions and therefore an award of sanctions is not appropriate.

The second set of requests for production of documents sought the production of: (1) all documents responsive to the Second set of Interrogatories; (2) all correspondence related to the project from 2012 through final completion; (3) correspondence sent to or from Frontier, Adams, Oufnac, Barcelona, DeHarde, and Kennedy; (4) all inspections; (5) inspections by public works, the architect, and Liberty; (6) correspondence regarding the water and sewer tie-ins, Entergy's powerlines, redesign of the power infrastructure, power line, poles, and electrical meters; (7) the firewall partition design; (8) the decision to terminate Parkcrest from the project; (9) the performance of Colmex, the defective work of Colmex, and change in the scope of work; (10) Karl Moser's documents; and (11) liquidated damages including the inspections performed to make the determination. Rec. Doc. 169.

Due to the difficulty HANO experienced in complying with the discovery, the parties entered into an agreement which provided that HANO would produce all documents from 2013 to the present that are responsive to Liberty's Second Request for Production of documents by May 17, 2017. *Id.* After HANO missed the agreed to deadline again, the Court extended the deadline to complete the production in connection with its agreement to Friday, June 2, 2017 at 5:00 p.m. Rec. Doc. 206. The extension that was issued regarded all of the information sought by the 2nd Request for Production, to which HANO agreed, and the court adopted the agreement as its order. The order therefore having adopted the agreement of counsel included the term to produce

documents from 2013 to the present that are responsive to the 2nd Request for Production of Documents. Contrary to the position of HANO, there was an order for it to comply with.

### B. The July 31 and August 1, 2017 Productions

According to Liberty it was precluded from the use of the documents produced in Production 7 and 8 because they took the depositions of the critical witnesses in the interim, without specifying the particular documents whose use was critical to the development of the case or the issues involved in the case, Liberty seeks a blanket exclusion of all documents produced in Productions 7 and 8 at the trial. Liberty does direct the Court to a sampling of the documents that reference DeHarde and Barcelona regarding the project. Rec. Doc. 366-1, p. 4, Exhibit E, F. Liberty also points to the fact that the documents produced were several months old and should have been produced by the June deadline.

HANO contends that Production 7 and 8 was its attempt at honoring its obligation to supplement all responses which were not otherwise made known pursuant to Rule 26(c). HANO contends that it met its obligation to supplement and that it did so by the Court's discovery deadline of August 1, 2017. HANO also advances the argument that it became aware that additional documents should be produced during the DeHarde deposition when counsel for Liberty called for production of the actual pay application and that it thereafter produced the documents on the subject dates. Rec. Doc. 372. HANO's suggestion that this triggered its obligation to supplement however, is not believable given what the number and type of documents that were produced and the inconsistency of HANO's counsel's representation during the hearing on this matter.

Interestingly, the documents that HANO produced according to its excel spread summary sheet appear to overlap with what HANO agreed to produce in its agreement with Liberty that was converted to the court's order. The Court agrees, however, with HANO that the documents it

11

produced from mid-June 2017, while technically responsive to the requests, could not have been produced by June 2, 2017, thereby partially requiring a supplementation.

The real issue, however, lies with the documents produced from mid- March to June 2, 2017, which are clearly documents that would fall within the confines of the order. HANO's counsel seems to advance the argument that they were understaffed because he was incredibly busy taking or defending depositions, filing and opposing motions, and reviewing documents for relevancy and privilege. Rec. Doc. 372. However, counsel is responsible for properly staffing the case to meet the demands of the litigation. As a result, the Court finds that the documents produced from mid-March to May 31, 2017 violate the Court's order of June 2, 2017. The remaining documents from June 1, 2017 through mid-June do not violate the Court's order.

**C. Duplicate Documents**

Liberty seeks the exclusion of the documents produced on July 31 and August 1, 2017. Rec. Doc. 366. To some degree after HANO responded to its charge by pointing out that some of the documents were duplicates produced during an earlier production, Liberty has since modified its position and now states that it seeks to preclude only those Bates-stamped documents from HANO-086794 to HANO-090925, or 4,131 pages, which had not been previously produced. Rec Doc. 380. The Court notes that Liberty does not identify either the subject matter of the documents that were duplicates or cull out the particular documents from the late production that were actually duplicates.

HANO contends that the offending documents that were identified by Liberty as including Barcelona and DeHarde are actually documents that were produced during an earlier production. HANO contends that the "TAB REPORTS are another example of documents that were produced in the July 31 and August 1 2017 production and also the earlier Production 5. *See* HANO-061333

12

thru HANO-061352. HANO therefore contends that Liberty had every opportunity to question either Barcelona or DeHarde about the warranty issue regarding the water heater. Rec. Docs. 372; 391-2, pp. 1-12.

A court may, in its discretion, preclude evidence if: (1) the offending parties were not substantially justified in failing to disclose information required by Fed. R. Civ. P. 26(a) or Fed. R. Civ. P. 26(e); and (2) the failure to disclose was not harmless. *Hipsaver Co. v. J.T. Posey Co.,* 497 F. Supp. 2d 96 (D. Mass. May 15, 2007). In that analysis, courts consider a multiplicity of pertinent factors, including the history of the litigation, the proponent's need for the challenged evidence, the justification, if any, for the late disclosure, and the opponent's ability to overcome its adverse effects. Surprise and prejudice are important integers in this calculation. *Gagnon v. Teledyne Princeton, Inc.* 437 F. 3d 188, 197 (1st Cir. 2006). Because the Rule contemplates strict adherence to discovery rules and harsh sanctions for breaches, the required sanction in the ordinary case is mandatory preclusion. *Id.*

A party that without substantial justification fails to disclose information required by Rule 26(a) or Rule 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. *Id.; Hipsaver,* 497 F. Supp. 2d 96.

As is common in cases involving electronic discovery, some of the documents in the late production were duplicate documents that were contained in earlier productions. The Court received per its supplemental request from HANO a listing of documents that were contained in both Production 7 and 8. This report identifies 581 duplicate documents produced either in Production 7 or 8. Rec. Doc. 383-2. The evidence shows that these duplicate documents were subpoenaed by Liberty from Colmex, Perez, or were produced by HANO in earlier productions.

Having determined that 581 of the 4,131 pages were duplicates for which Liberty cannot claim surprise or prejudice, the production of these documents are not precluded as evidence in this case. The evidence also indicates that Liberty was aware of the water heater warranty issue which could have been addressed during the depositions. Liberty's failure to question the witnesses regarding these documents would at best be considered strategic but certainly do not warrant the imposition of sanctions and the late production is harmless.

   **D. Impact of Late Production**

Liberty next contends that there were at least 476 pages of documents that would be relevant to the depositions of HANO representatives and design team including the depositions of DeHarde, Barcelona, Adams, and Perez APC's 30(b)(6) deposition as well as Integrated Logistical Support Incorporated's deposition. Liberty contends that the documents would also have been relevant to the Grass Maintenance contract, acceptance of the streets and public right of ways project, and the substantial completion for the project. Liberty also contends that July 31, 2017 and August 1, 2017 productions also show that after March 25, 2017, Asset Management took over the maintenance of the Project units and that Merrill and Scott began to make service and maintenance work requests to Colmex in response to tenant-raised issues in their living units.

Liberty, in its supplemental memorandum, seems to have shifted the argument from a complete exclusion to now a partial exclusion. While it originally sought the exclusion of all 4,131 pages, the argument has changed to suggest that at least 476 documents would have been relevant to the depositions, and now contends that only 188 documents from Production No. 7 actually ended up on HANO's trial exhibit list and 2 documents from Production No. 8. Rec. Doc. 382. Liberty contends that the exclusion of the specific documents that ended up on HANO's exhibit list would have a minimal impact on the trial, but that the court should exclude them. Liberty

acknowledges that the 2 documents from Production 8 involve the HVAC system and would not have a substantial impact. It also appears that Liberty suggests that documents produced during July 31 and August 1 concerning warranty work should be excluded because they are not relevant to the claims at issue in this matter.

Liberty contends that reopening discovery would not cure the problem that was created by the late production and would be cost-prohibitive. Liberty contends that the documents concerning Tropical A-C and Heat, LLC and Chuck Barbot were not produced until Production Nos. 7-8 and should be excluded. Rec. Doc. 382, p. 7. Liberty also identifies a list of depositions and work that would have to be done to cure any problems caused by the late production.

HANO, at the direction, of the Court submitted a supplemental memorandum acknowledging that its counsel's representation during the hearing was in error. HANO's counsel now states that the issue of termite damage did not arise until late May 2017, and that the extent of the damage was not identified until August 2017, rendering it impossible for any witness at that time to provide full testimony on the issue. Rec. Doc. 391, p. 3. HANO, therefore, indicated that Adams would not have had knowledge of the extent of the termite damage at the time of the deposition or of Parkcrests failure to maintain the termite contract. *Id.*

HANO contends that Liberty had plenty of opportunity to ask HANO's witnesses about latent defects at the Florida Project but failed to do so. HANO contends that Liberty had received documents two months earlier regarding latent defects. Rec. Doc. 391, p. 5. HANO, during its October 9, 2017 filing, indicated that it still intended to produce additional documents evidencing ongoing damages relating to increased costs of construction. HANO proposed that DeHarde could be produced for a deposition of an additional three hours, and that she could be questioned about new issues which were not previously disclosed and which appeared for the first time during the

late production. Finally, HANO contends that the documents produced were timely as it was produced by the discovery deadline.

In considering the remaining issue of impact of the late production, the Court is of the opinion that both counsel have missed the forest for the trees. The real issue from the Court's perspective is whether the documents produced on July 31 and August 1 contain subject matter that Liberty was not aware that would impact their ability to prepare their case. The argument has devolved to only a numerical calculation regarding the timing of the production. Despite the multiple replies and sur-replies, Liberty has failed to isolate which issues are contained in the late production which it was unaware of and was not able to question witnesses about.

It is Liberty's burden to do so and it has failed. Despite HANO's noncompliance with the order, the mover was required to show how it is prejudiced by the late production. The only subject matter which seems to be truly late is regarding the termite contract and its lapse. It still is unclear, however, how many pages of the documents Liberty is really seeking to exclude. To exclude 4,131 documents, or 497 documents, just because they were late without any proof as to prejudice would be inappropriate and not consistent with the case law.

As further example of the inadequacy of the motion, while Liberty contends that 497 of the documents would have been relevant to the witnesses, it fails to say how the inability to question the witness about the particular subject matter of the documents results in prejudice. *Oklahoma v. Tyson Foods, Inc.* 262 F. 2d 617 (Okla. 2009). As a result, the court finds that the late production was harmless because while Liberty sounds the alarm and uses the terminology that they are prejudiced their motion and multiple filings fail to show how. If Liberty has not shifted its argument and still seeks an exclusion of the remaining documents, whether that number is 3,500,[7]

---

[7] The number is determined by subtracting the 581 duplicate documents from the 4,131 documents produced in the late production.

497,[8] or 188,[9] the Court finds that this request is overreaching in light of the absence of evidence of harm.

Additionally, as to the documents regarding the warranty issue which may be deemed irrelevant, those documents are not appropriately the subject of this motion. Instead, it is for the District Judge who will try this case to make a determination as to the relevancy of any warranty documents. While there is no doubt that HANO struggled to keep up with its discovery obligations and violated this court's order, the court cannot say that sanctions are warranted as any harm to Liberty is *de minimis*. This conclusion is based upon Liberty's inability to provide proof of prejudice by drawing the court's attention to the particular subject matter about which they were blindsided. It almost seems that at the time of the filing of this motion Liberty had not reviewed the documents and compared them to the other productions to determine if there was anything new rather than duplicative.

**IV.     Conclusion**

   **IT IS ORDERED** that Intervenor's **Liberty Mutual Insurance Company's Motion for Sanction (R. Doc. 366)** is **DENIED.**

New Orleans, Louisiana, this 14th day of December 2017.

**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[8] The documents that Liberty contends it could have used to question witnesses, but due to the late production could not.
[9] The actual documents that were produced in the late production which ended up on the exhibit list.