UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PARKCREST BUILDERS, LLC | CIVIL ACTION |
| VERSUS | NO: 15-1533<br>c/w 16-14118<br>16-15849 |
| HOUSING AUTHORITY OF NEW ORLEANS | SECTION: "J"(4) |

## ORDER AND REASONS

Before the Court are *Petitions for Writs of Execution and Other Proceedings Supplemental to Judgment* **(Rec. Docs. 574, 577)** filed by Liberty Mutual Insurance Company ("Liberty") and Ted Hebert, LLC ("Hebert"), respectively.[1] The target of these Motions, the Housing Authority of New Orleans ("HANO"), has filed an opposition (Rec. Doc. 575) and upon order of this court, Liberty filed a supplemental memorandum. (Rec. Doc. 586). Following Liberty's motion, HANO filed its related *Second Motion to Stay Execution of Judgment* **(Rec. Doc. 587)**. Liberty filed opposition (Rec. Doc. 594) to which HANO replied (Rec. Doc. 602). Having considered the Motions, the memoranda, the record, and the applicable law the Court finds the Motions should be **DENIED**.

---

[1] Hebert's motion is substantively identical to that of Liberty's. For the sake of simplicity, the Court will refer only to Liberty's motion although the Court's findings concerning the former are applicable to the latter.

1

## **FACTS AND PROCEDURAL HISTORY**

This Court entered judgment in favor of Liberty, granting it $437,851.60, plus costs and reasonable attorney's fees, on July 10, 2017. (Rec. Doc. 541). HANO then moved this Court to reconsider its decision to award attorney's fees and moved for a stay of execution of the judgment pending reconsideration. The Court denied both motions. (Rec. Docs. 545, 542). HANO then filed a Motion to stay proceedings without posting supersedeas bond, pending resolution of its appeal of the attorney's fees award. The Court also denied this petition for a stay because HANO had not satisfied its burden of demonstrating that Liberty's award for damages and fees was adequately secured. (Rec. Doc. 559). The Court noted that it could grant a stay without bond, if HANO could demonstrate that it would be willing and able to satisfy the judgment upon resolution of the appeal.

Liberty then filed its petition for a writ of execution on August 17, 2018. Pursuant to its motion, Liberty asks this Court to "issue a writ of execution commanding the United States Marshall to seize the nonexempt portion of the property of HANO sufficient to satisfy the amount of the Judgment subject to this Petition--$437,851.60." (Rec. Doc. 574 at 3). Liberty also asks to engage in discovery pursuant to Fed. R. Civ. P. 69(a)(2) and for any other equitable relief this Court might give. HANO promptly filed an opposition. The Court ordered that Liberty file memoranda supporting its motion and Liberty did so. On October 7, 2018, HANO filed a second motion to stay execution of the Court's judgment. Liberty filed an opposition memorandum to which HANO replied.

## PARTIES' ARGUMENTS

HANO argues a writ of execution should not be issued because the Federal Rules of Civil Procedure require the application of state law for application of judgments and the Louisiana Constitution and Louisiana statutory law prevent seizure of the property of a state entity such as the local housing authority. *See Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.*, 943 So. 2d 1037, 1046 (La. 2006). Furthermore, HANO argues that this Court may not violate these anti-seizure provisions unless there is a federal interest in the remedy, which there is not in this diversity case. *Freeman Decorating Co. v. Encuentro Las Americas Trade Corp.*, 352 F. App'x. 921, 923 (5th Cir. 2009) (per curiam). HANO also resists discovery of its assets, because it suggests this Court has held that the state law anti-seizure provisions "prevent Liberty from executing its judgment against HANO's assets." (Rec. Doc. 575 at 8). To find that state law does not grant Liberty a judicial mortgage over HANO's property but allow Liberty post-judgment discovery "would be a travesty."

In support of its second motion to stay, HANO asserts that it is "committed to submitting a request to HANO's governing Board of commissioners for allocation of funds to fulfill the judgment, if affirmed after appeal." (Rec. Doc. 587-1 at 2-3). HANO explains that it cannot offer a more definite promise than that because "HANO has no independent funding to pay a judgment." HUD is the sole source of operation funds. (Rec. Doc. 602-2 at 2). According to federal regulations, HANO must receive

approval from HUD of payment. Only upon HUD's approval, says HANO, can it request approval from its Board of Commissioners to pay the judgment.

Liberty counters that the Louisiana Constitution does not prohibit seizure of state property because there is a federal interest in the enforcement of the judgment. Liberty argues a federal interest exists in this case because (1) courts have an interest in enforcing their judgments when recalcitrant state entities attempt to unfairly immunize themselves from paying and (2) HANO is supported entirely with federal funds. (Rec. Doc. 586 at 3-6). Liberty also suggests that even if there were no federal interest, Louisiana law allows for execution on funds where those funds have been appropriated for in a contract. (Rec. Doc. 586 at 6). Moreover, Liberty argues that HANO's motion to stay should be rejected because HANO has failed yet again to provide any assurance that it will pay the judgment. Liberty urges that HANO has promised nothing more than to seek permission to pay the judgment and points out that when HANO sought permission to fund a supersedeas bond, at a cost of 2% of the Court's judgment against HANO, the request was denied. (Rec. Doc. 594 at 2).

## LEGAL STANDARD AND DISCUSSION

### I.

In a diversity action, the mechanics of execution are dictated by Federal Rule of Civil Procedure 69(a): "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the

extent it applies." Thus, the Court must look to state law for the procedure of execution against a state entity.

The Louisiana Constitution provides the proper course of action: funds are to be appropriated by the state legislature or by the subdivision of the state that is the judgment debtor. La. Const. Ann. art. XII, § 10. That same constitutional provision explicitly prohibits seizure of public property. *See Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*, No. CV 15-1533, 2018 WL 3743812, at *5 (E.D. La. Aug. 7, 2018) (citing La. Const. Ann. art. XII, § 10). Neither HANO nor the state legislature have appropriated funds, so according to state law Liberty may not yet execute on its judgment. *Id.*; *see also Freeman*, 352 F. App'x. at 923.

However, state law is not dispositive of a federal court's decision of whether to grant a writ of execution. *See Gates v. Collier*, 616 F.2d 1268, 1271 (5th Cir. 1980). There is an exception to the general rule: "when there is a federal interest in the remedy, the federal courts may trump a state's anti-seizure provision and enforce a money judgment against a public entity." *Benson v. Regl. Transit Auth.*, No. CIV.A. 05-2777, 2015 WL 5321685, at *2 (E.D. La. Sept. 10, 2015) (quoting *Freeman*, 352 F. App'x. at 923). For remedies of some actions, such as an action to enforce civil rights, a federal interest is obvious. *Bowman v. City of New Orleans*, 914 F.2d 711 (5th Cir.1990). In a diversity action like this one however, no federal interest is immediately apparent. *See Benson*, 2015 WL 5321685, at *2.

Nevertheless, a federal interest may develop if a subdivision of the state proves sufficiently resistant to paying a judgment. *Gates*, 616 F.2d at 1271 (5th Cir. 1980.

5

"Federal courts are not reduced to issuing judgments against state officers and hoping for compliance." *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 690 (1978)). "[W]here a state expresses its unwillingness to comply with a valid judgment of a federal district court, the court may use any of the weapons generally at its disposal to ensure compliance." *Id.*

However, the state entity must be guilty of more than mere sloth for a federal interest to arise. *Freeman*, 352 F. App'x. at 925. The Fifth Circuit has noted it has only "found a sufficient federal interest in the remedy when the governmental entity's behavior indicates an obstinance to ever satisfying the judgment." *Id.* In an unpublished decision, *Freeman Decorating Co. v. Encuentro Las Americas Trade Corp.*, 352 F. App'x 921, 925 (5th Cir. 2009), the Fifth Circuit found a state entity's behavior to amount to something less than obstinance where the city attorney sent a letter indicating the City of New Orleans believed it did not have to satisfy a judgment immediately. The city sent the letter nearly a year and half after judgment against the City was issued. *Id.* at 922, 955.

In *Gary W. v. State of La.*, 622 F.2d 804, 806 (5th Cir. 1980) the Fifth Circuit examined a district court's Rule 70 order directing the defendant, the Secretary of the Louisiana Department of Health and Human Resources to pay the court's judgment from the department's funds.[2] *Id.* at 805. The department argued that this violated

---

[2] In that case, the clerk of the district court had already issued a writ of fieri facias directing the marshal to seize the property of the property of the department. The district court declined to quash the order.

the Louisiana Constitution's prohibition of payment of judgments by state entities except from funds appropriated for that purpose by the legislature. *Id.* However, two bills had been introduced by the legislature to authorize payment but had not passed. *Id.* at 805-806. The Court of Appeals rejected the assertion that the district court's order was improper because an "order directing the responsible state official to satisfy the judgment out of state funds [was] the only reasonable way to ensure compliance with a valid federal judgment." *Id.* at 806.

## II.

There can be no doubt that HANO has strenuously resisted satisfying the judgment it owes Liberty. Indeed, HANO's refusal to reasonably cooperate spurred this extensive litigation. However, past behavior does not necessarily dictate future conduct; the Court requires some evidence that HANO will not be willing or able to ever satisfy the judgment before it will allow execution to proceed.

As evidence that HANO intends to "resist the judgment until the bitter end," *Gates*, 616 F.2d at 1271-72, Liberty quotes deposition testimony from HANO's Executive Director, Gregg Fortner:

> In New Orleans, and my lawyers can better explain this, we have judgments on the books—and other liabilities we can't pay because of the lack of concurrence from HUD and the lack of resources that we have for it because we don't have a funding source that will allow us to pay for those liabilities. Same situation as San Francisco.

(Rec. Doc. 586 at 5). According to Liberty, the situation in San Francisco was that Mr. Fortner, as executive director of the San Francisco Housing authority, was held in contempt by a state court for failing to pay judgments in his capacity as executive

7

director of the San Francisco Housing Authority.

As further evidence, Liberty draws attention to the nature of HANO's promise regarding payment in its second motion to stay. In denying HANO's first motion this Court allowed HANO opportunity "to refile its motion if it includes evidence that HANO will be able and willing to pay the judgment upon resolution of appeal." (Rec. Doc. 559 at 13). In its second motion HANO makes no commitment to pay on resolution of appeal; rather, HANO's General Counsel promises HANO will seek authority to pay the judgment from HUD and from its board. (Rec. Doc. 587-2). Regulation ties HANO's hands from doing anything more than that, it avers. (Rec. Doc. 602-2).

The Court must agree with Liberty that a promise to make a request for payment from HUD provides little assurance to Liberty that it will be paid upon resolution of appeal. HANO requested funding for a supersedeas bond from HUD and HUD denied the request. A supersedeas bond can be obtained at fraction of the price of the final judgment. Given HANO's continued failure to "establish some type of positive protection of the judgment creditor's rights," the Court must once again reject HANO's request to stay without posting bond.

Normally, the consequence of not staying execution is that execution proceeds. Here however, because the judgment derives from diversity jurisdiction and is against a state entity, execution may not proceed until HANO has demonstrated "behavior [that] reaches the level of recalcitrance required under *Gates*." *Freeman*, 352 F. App'x at 925. HANO urges it is not being recalcitrant, it is merely taking the

8

only course of action it is allowed. Thus, while HANO has not provided adequate security to its judgment creditor, HANO, arguably, has not refused to *ever* pay the judgment either. This post-judgment litigation appears stuck in a legal no-man's land.

The Court believes that the best option is to preserve the status quo by directing HANO's Executive Director to purchase a supersedeas bond. Given multiple opportunities to provide assurance that HANO will satisfy the judgment—only after it has been upheld by the Fifth Circuit—HANO has repeatedly failed to do so. HANO claims its hands are tied by regulation; fortunately, federal courts are empowered to use their inherent powers, as codified in Rules 69 and 70, to resolve such an issue with execution of a judgment. *See Hankins v. Finnel*, 964 F.2d 853, 860 (8th Cir. 1992) ("Where state law fails to supply the necessary procedure, or actually stands in the way of enforcement, the district court may take the necessary steps to ensure compliance with its judgment."); *see also Spain v. Mountanos*, 690 F.2d 742, 747 (9th Cir. 1982) (noting a district court has "plenary power to enforce its commands"). Given HANO's repeated statements regarding its lack of autonomy over its own budget, it would appear to this court that "an order directing the responsible state official to satisfy the judgment out of state funds" may be "the only reasonable way to ensure compliance with a valid federal judgment." *Gary W.*, 622 F.2d at 806-807. However, given the short amount of time that has passed since this Court's judgment—the Court's judgment is still on appeal—the Court thinks it would be too drastic a step to allow execution on the judgment, unless HANO disobeys this Court's

9

Order to post supersedeas bond. The Court believes that its decision will serve to adequately protect the judgment creditor while placing a minimum burden on HANO.

The Court is further convinced that this action is appropriate given the particular facts of this case. First, HANO is unlike most state entities in that it is not funded by State of Louisiana but by the federal government. (Rec. Doc. 602-2 at 2) ("In truth, HUD is the sole source of operational funds for HANO, which leaves HANO no option but to seek authority from HUD to expend those funds in accordance with HUD's mandates."). The Court finds this extension of control by the federal government through exclusive funding to be significant because it it potentially gives rise to a federal interest independent to the Court's interest in enforcing its judgment.[3] Moreover, that HANO was allocated funds by the federal government to pay for the housing project that gave rise to this litigation also severely lessens the concern that this Court is "assuming the role of 'superlegislature to judge the wisdom or desirability of legislative policy determinations made in the local economic sphere.'" *Town of Ball v. Rapides Par. Police Jury*, 746 F.2d 1049, 1060 (5th Cir. 1984) (quoting *New Orleans v. Dukes*, 427 U.S. 297, 304 (1976)).

Second and relatedly, the "Court cannot substitute its own judgment as to the wisdom of economic policies adopted by a democratically elected legislature," *Bennett v. City of New Orleans*, No. CIV.A. 03-912, 2004 WL 60316, at *7 (E.D. La. Jan. 9,

---

[3] Courts have recognized a federal interest in the disbursement of federal funds in a variety of contexts. *See, e.g., S. Dakota v. Dole*, 483 U.S. 203, 207 (1987), *Massachusetts v. United States*, 435 U.S. 444, 460 (1978).

2004), but the Court's decision to direct payment by HANO to secure a judgment regarding a building contract for public works is directly in line with the intentions of the Louisiana legislature. According to Louisiana law, "[a]ll public entities shall promptly pay all obligations arising under public contracts when the obligations become due and payable under the contract." La. Stat. Ann. § 38:2191. If a public entity fails to make "final payment when due" the entity "shall be subject to mandamus to compel the payment of the sums due under the contract up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders." *Id.* This type of relief is not "conditioned on appropriated funds remaining available." *Quality Design & Const., Inc. v. City of Gonzales*, 146 So. 3d 567, 572 (La. App. 1 Cir. 3/11/14) (finding that the legislature lacked an "intent to leave payment of these contracts to the discretion of [the public entity] in any way"). HANO allocated $11,288,000.00 to pay for the construction of the Florida Avenue New Affordable Housing Units project. HANO awarded the contract for that amount to Parkcrest before it entered into a takeover agreement with Liberty. (Rec. Doc. 505-5). HANO agreed that "the Contract Balance has been dedicated to [Liberty] for use in completion of the Project, without offset for any claim by Owner arising from Contractor's work." (Rec. Doc. No. 506-2 at ¶ 13). Finally, HANO approved pay applications in the amount of $10,789,723.50, with $567,890.19 held in earned retainage. (Rec. Doc. No. 510-66). The Court does not use this provision as a vehicle for its order—Liberty did not file a petition for a writ of mandamus—but merely notes it as a reflection of the legislature's will to provide "for the efficient

11

facilitation of forcing public entities to promptly render monies owed under public contracts." *St. Bernard Port, Harbor & Terminal Dist. v. Guy Hopkins Constr. Co.*, 220 So. 3d 6, 13 (La. App. 4 Cir. 4/5/17). By ordering HANO to secure a supersedeas bond, the Court fulfills the federal interest in having this Court's judgment enforced but also the state legislature's interest in having HANO take a step towards satisfying its contract debts.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Petitions for Writ of Execution and Other Proceedings Supplemental to Judgment* **(Rec. Docs. 574, 577)** are **DENIED without prejudice**. Petitioners may refile their motions as is necessary.

**IT IS FURTHER ORDERED** that HANO's *Second Motion to Stay Execution of Judgment* **(Rec. Doc. 587)** is **DENIED**.

**IT IS FURTHER ORDERED** that HANO is directed to post supersedeas bond no later than December 21, 2018.

**IT IS FURTHER ORDERED** that Gregg Fortner, in his official capacity as executive director of HANO, is directed to ensure HANO's compliance with this Order.

New Orleans, Louisiana, this 30th day of November, 2018.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE