UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PARKCREST BUILDERS, LLC** | **CIVIL ACTION NO.** |
| **VERSUS** | **NO:    15-1533** |
| **HOUSING AUTHORITY OF NEW ORLEANS (HANO)** | **SECTION: "J" (4)** |

### ORDER

Before the Court is Defendant **HANO's Rule 26(B)(4)(E) Motion For Expert Fees And Costs (R. Doc. 490)**, which seeks related to the deposition of HANO expert witness J. Brandon English in the amount of $15,455.11 from Intervenor, Liberty Mutual Insurance Company ("Liberty") and Plaintiff, Parkcrest Builders, Inc. ("Parkcrest"). This motion is filed pursuant to the undersigned's order granting permission to seek reasonable fees and costs for the expert deposition should the parties disagree. R. Doc. 322. Liberty and Parkcrest jointly oppose the motion. R. Doc. 494. The Court considered this matter on the briefs.

I.   **Factual Summary**

This matter arises out of a construction contract dispute between Parkcrest, as the original contractor, and HANO, the property owner. Parkcrest contracted with HANO for the construction of the Florida Avenue: New Affordable Housing Units ("the Project"). The relationship between HANO and Parkcrest deteriorated during the course of the Project and, on April 10, 2015, HANO terminated Parkcrest prior to completion. HANO then sought Liberty Mutual to perform its obligations as surety for Parkcrest. On June 9, 2015, HANO and Liberty Mutual entered into a Takeover Agreement to complete the Project. Once the Takeover Agreement was executed, Liberty Mutual retained Parkcrest as its completion contractor and the parties resumed work.

However As such, the Project continued to be plagued by delays and disagreements about their cause. As a result, Parkcrest initiated this suit in the Eastern District on May 8, 2015. R. Doc. 1.

On June 26, 2017, HANO submitted a report of J. Brandon English (hereinafter "the Report" or "English Report") styled as a "rebuttal" expert report. R. Doc. 239-1; *see also* R. Doc. 239-8. In response to the report on July 5, 2017, Parkcrest and Liberty filed their Motion in Limine seeking to exclude his testimony because they believed that the purported rebuttal report also contained information supporting their affirmative claims in this matter. *Id.* In that motion, Parkcrest and Liberty contended that while HANO filed a report on the rebuttal expert deadline, the English Report was really being offered as its main expert report, which violated the Scheduling Order deadline of June 2, 2017. *Id.* In addition, on July 3, 2020, Liberty filed multiple other *motions in limine* seeking to limit and exclude English's report and testimony for various other reasons. R. Docs. 229, 230, 231.

Thereafter, on July 25, 2017, before the Court could rule on the *motions in limine*, Liberty filed a motion to compel the deposition of English. R. Doc. 297. At that time, Liberty suggested to the Court that the deposition had been scheduled for July 31, 2017 consensually scheduled it and the other parties but not HANO. *Id.* HANO, however, allegedly notified Liberty that English was not available on July 31, 2017 and also refused to participate in a deposition after August 1, 2017. *Id.*

Liberty claimed that it needed to take English's deposition at some point between July 31, 2017 and August 31, 2017. *Id.* Liberty also requested that the deposition take place in New Orleans and, if his deposition did not occur that he be precluded from testifying at trial. *Id.* At the time the motion to compel was filed, the trial was set for September 11, 2017 as such Liberty claimed it would be prejudiced if there was no deposition before trial. *Id.*

Undersigned held a hearing on this matter and the parties agreed to take HANO's Expert, J Brandon English, deposition on August 29, 2017. R. Doc. 322. English was cross-noticed for his deposition set for August 29, 2017. R. Doc. 494-4. On the morning the deposition was scheduled to take place, Parkcrest counsel, by phone conference, discussed the potential inclement weather from the hurricane in Texas and the prospective flood threat to downtown New Orleans. R. Doc. 490, p. 2. Counsel for HANO offered the use of his law office, which is located in Kenner, Louisiana, as an alternative location for the deposition. *Id.* He also proposed that Parkcrest's counsel, who were located in Baton Rouge, could participate in deposition by telephone. *Id.*

Liberty's counsel, by email dated August 29, 2017 7:00 AM, advised counsel for HANO that the news reported puddling in Kenner and standing water on Earhart. R. Doc. 494-5, p. 6. He further referenced that they were predicting two inches of rain per hour and that neither the pumps in New Orleans or Jefferson Parish could withstand that amount of rain. *Id.* He indicated that the courts and most law firms were closed. *Id.*

Parkcrest's counsel also advised that the National Hurricane Center reported that the storm shifted slightly east overnight and there was a flash flood watch in effect with 100% chance today for New Orleans and Baton Rouge. R. Doc. 494-5, p. 7. Counsel also made mention that the Governor of Louisiana, John Bel Edwards, said the "worst is yet to come for Louisiana" and the Mayor said, "Everyone in in New Orleans should stay home Tuesday because of Harvey." *Id.*

English had arrived from Kansas City, Missouri on August 28, 2017 for the deposition that was to take place the next day. R. Doc. 490-6. He was scheduled to depart from New Orleans on Wednesday, August 30, 2017. R. Doc. 490-6, p. 10. The flight was booked on August 7, 2017. *Id.* Seven days after the court ordered the deposition to take place on August 29, 2017, the Governor

3

issued a state of emergency on August 10, 2017, which was made retroactive to August 5, 2017 and was in effect until September 3, 2017 in anticipation of Tropical Storm Harvey.[1]

HANO contends that Liberty and Parkcrest cancelled the deposition after "considerable time and expense were incurred by the expert. R. Doc. 490, p. 2. Thereafter, counsel for HANO sent a letter to counsel for the parties requesting payment of expert costs and fees and sent an invoice with supporting documents totaling $7,189.02. *Id.* Parkcrest never responded to HANO's request and counsel for Liberty offered to pay only $470.21 which was rejected by HANO. R. Doc. 490, p. 3. English's deposition was re-noticed by Liberty for November 2, 2017. *Id.* After the November 2, 2017 deposition, HANO's counsel sent a $8,266.09 invoice for all expert fees, costs and expenses associated with that deposition. *Id.* HANO, therefore, contends that the fees and costs sought by its expert for both the August 29, 2017 and November 2, 2017 deposition dates are reasonable and should be awarded in the amount of $15,455.11. *Id.*

Liberty and Parkcrest filed a joint opposition to oppose the expert fee request. R. Doc. 494. They contend that English was excluded from testifying at trial by Judge Barbier, who found that (1) HANO had failed to timely disclose English in accordance with the Courts Scheduling Order; and (2) English was utterly unqualified to render the opinions for HANO. R. Doc. 494, p. 1. They further contend that HANO should not be rewarded for this behavior by recovering English's fees. *Id.* Liberty and Parkcrest contend, that should the Court find that HANO is entitled to a fee, that it must be a reasonable fee. R. Doc 494, p. 2. Liberty and Parkcrest finally contend that $15,455.11 is an unreasonable amount for a one-day deposition and includes time that is both excessive and expended by English on matters that are not recoverable under Rule 26(b)(4)(E). *Id.*

---

[1] *See, e.g.,* https://www.nola.gov/mayor/news/archive/2017/20170810-pr-testing-of-damaged-swb-turbine-to-brin/.

## II.    Standard of Review

Compensating an expert for his deposition time is mandatory under Federal Rule of Civil Procedure ("Rule") 26(b)(4)(C)(I), because it would be unfair to require one party to subsidize discovery for the opposing party. Fed. R. Civ. P. 26(b)(4)(E)(i). The reasonableness of an experts fee depends upon: "(1) the witness's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert ; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to assist the court in balancing the interest[s] implicated by Rule 26." *Miller v. Credit*, No. 12-CV-138, 2013 WL 1833310, at *2 (M.D. La. May 1, 2013).

"[T]he burden of proving the reasonableness of an expert's fees lies with the party seeking reimbursement." *Fiber Optic Designs, Inc. v. New England Pottery, LLC*, 262 F.R.D. 586, 589 (D. Colo. 2009). "Ultimately, however, it is in the court's discretion to set an amount that it deems reasonable." *Borel v. Chevron U.S.A. Inc.*, 265 F.R.D. 275, 276 (E.D. La. 2010) (internal quotations omitted).

## III.    Entitlement to Expert Fee

English was retained by HANO as an expert in civil and forensic engineering to write a report on a variety of issues addressing the entire Florida construction project. R. Doc. 490-1, p. 6 HANO contends that English's report was purportedly offered as a rebuttal to Liberty and Parkcrest's experts who opined that Parkcrest's construction delay claims and attributing fault as to the incomplete, incorrect, and deficient work performed on the Project. *Id.* They attached English's curriculum vitae. *See* R. Doc. 239-8, p. 56-57.

Parkcrest and Liberty point out that English was precluded from testifying at trial as a result of a *Daubert* and *in limine* challenges by Liberty and Parkcrest. R. Doc. 494, p. 3. They further point out that the District Judge found that English's testimony on the issue of delay or substantial completion of the project was not admissible and (2) the defendant HANO had not timely disclosed that English would be their rebuttal expert witness as required by the Scheduling Order in this case. R. Doc. 494, p. 4.

In this case, well before English was disqualified, Liberty and Parkcrest filed *Motions in Limine* seeking to exclude his testimony. These pleadings were filed as early as July 3, 2017. R. Doc. 229. While Liberty and Parkcrest now claim that they did not appreciate the true import of English's qualifications, which is why they wanted to take his deposition, that statement is not born out by the evidence. In fact, in July 2017, one month before the originally scheduled deposition, Liberty and Parkcrest, in their pleadings, sought the exclusion of English's testimony based upon his lack of qualifications. R. Doc. 240

In the pleading, Parkcrest and Liberty contended that English's testimony should be disqualified because he lacked the scientific, technical, or other specialized knowledge. *Id.* They further alleged that his opinions were based on incorrect factual assumptions and misstatements. *Id.* They argued that his opinions lacked methodology and that he relied upon incorrect standards regarding delay claims. *Id.* They appended expert reports from three other experts supporting their position. R. Docs. 240-5, 240-6, 240-7.

Less than a month later, on July 25, 2017, Liberty moved to compel the deposition of English. R. Doc. 297. In August of 2017, both Liberty and Parkcrest agreed to take English's deposition and also agreed to discuss a reasonable fee for the deposition and, if they could not reach an agreement, to submit the issue to the Court for its consideration. R. Doc. 322.

It is unclear to the Court why they decided to take his deposition. While they had the right to do so, they clearly did not need to take the deposition to file a motion seeking the exclusion of his testimony because the deposition occurred one month after the motion was filed; nonetheless, they vehemently pursued the taking of English's deposition.

As the agreed-upon deposition date approached, the weather in New Orleans took a turn for the worse; the deposition was scheduled during hurricane season. Counsel for HANO offered his office, which was located in Kenner, Louisiana, as an alternate location given the weather conditions. Even though the deposition was cancelled due to weather, it was only scheduled at Liberty and Parkcrest's behest and English incurred costs associated with appearing in Louisiana on August 28, 2017.

According to the archived history regarding Tropical Storm Harvey, the documents show that on August 29, 2017 there was a tropical storm warning was for Morgan City, Louisiana but not New Orleans, Louisiana. While Harvey became a Hurricane in Texas it had decreased to a Tropical Storm and, by 21:00 hours on August 28, 2017, the Tropical Storm Warning was discontinued at all locations. There was, however, heavy rain with the threat of flooding in New Orleans. It must be noted that it was Liberty and Parkcrest who insisted on the deposition originally and the costs incurred by English were incurred as a result of this request. Consequently, while it could have proceeded in Kenner, it was discontinued. Based on the evidence, there is an absence of manifest injustice. Consequently, the Court finds reasonable costs should be assessed for the English deposition on August 29, 2017.

After the cancellation of the August 29, 2017 deposition, the Liberty and Parkcrest re-noticed English's deposition for November 2, 2017. They present no credible explanation as to why the deposition was necessary given the depth of their multiple filings seeking to exclude his

testimony filed four (4) months earlier. Moreover, Liberty and Parkcrest knew that when they decided to take English's deposition there would be reasonable costs assessed associated with the deposition.

Just like they alleged in their July 2017 filing, the District Judge found that English was deemed not qualified because in one instance in his expert report, he used the wrong standard in an area in which he was purportedly an expert. R. Doc. 494-1. Second, the District Judge also found that when discussing "whether the owner had control over the event that cause the delay," English flipped the standard. *Id.* Third, the District Judge found that English who also had a law degree, although not a licensed attorney, sprinkled legal opinions in parts of the report. *Id.* The Court ultimately found that English did not have the expertise to render an opinion as offered. *Id.* The Court is of the opinion that all these factors weigh against granting the fee.

While his testimony was later excluded at trial, Liberty and Parkcrest knew his opinions were questionable, had evidence without taking his deposition that reflected the questionable nature of his opinions, and filed a motion to exclude his testimony three months before the second deposition occurred and yet still, they decided to take a deposition any way. There is also no evidence that the deposition was used to supplement the motion to exclude English's testimony. The Court is of the opinion that these factors way in favor of granting the fee request for the November 2, 2017 deposition.

However, Liberty and Parkcrest contend that because they won the *motion in limine* and English's opinion was excluded that it would constitute manifest injustice if they were required to pay the fee incurred. R. Doc. 494, p. 6. HANO does not respond to this issue.

It is not entirely clear, however, what manifest injustice means in this context. On the one hand, the exception to the mandatory fee provision of Rule 26(b)(4)(E) involves a "stringent

standard." *Reed v. Binder*, 165 F.R.D. 424, 427 (D.N.J. 1996). On the other hand, what that standard includes has not always been evident because the "case law interpretation of this provision is sparse." *Harris v. San Jose Mercury News, Inc.*, 235 F.R.D. 471, 473 (N.D. Cal. 2006); *see also Delgado v. Sweeney*, No. Civ. A 01-3092, 2004 WL 228962, at *1 (E.D. Pa. Jan. 6, 2004) ("Unfortunately, there is no clear definition of 'manifest injustice.'"). That said, most courts have found that manifest injustice exists under Rule 26(b)(4)(E) either when (1) a plaintiff is indigent or (2) requiring the plaintiff to pay an expert's fee would create an undue hardship. *See, e.g., Edin v. The Paul Revere Life Ins. Co.*, 188 F.R.D. 543, 547 (D. Ariz. 1999); *see also Harris*, 235 F.R.D. at 473.

Notwithstanding, in *Rogers v. Penland,* 232 F.R.D. 581, 583 (E.D. Tex, 2005), the Court held "to require a party to pay for the costs of a witness who was not even called, and against whom the court had sustained a *Daubert* challenge is manifestly unjust." (citing *Anthony v. Abbott Labs.,* 106 F.R.D. 461, 465 (D.R.I.1985) (discussing exorbitant expert fees)). In *Rogers*, however, both parties made a request for reimbursement of expert fees under Rule 26(b)(4)(C) after the jury returned a verdict. *See Rogers*, 232 F.R.D. at 582. The defendant in *Rogers* retained four experts, all of whom plaintiff deposed. However, at trial, the defendant did not call any of the four experts to testify nor did the defendant introduce any of their testimony. *Id.*

Notwithstanding defendant's decision to not call upon any of the experts, the court in *Rogers* noted that "while these circumstances, coupled with the late nature of the fee request, indicates a sharp application of the technical letter of the federal rules in this case, the matter probably does not rise to the level of 'manifest injustice,' at least not to the request in its entirety." *Id*. As such, the court, proceeded to review the requests in their entirety. *Id.* (reasoning "what is sauce for the goose, is sauce for the gander.").

Upon review, the *Rogers* court awarded reimbursement of these expert fees with the exception of one witness who was precluded from testifying at the trial after a successful *Daubert* challenge by the plaintiff. *Id.* at 583. With regard to this witness, the court reasoned that "[t]o require a party to pay for the costs of a witness who was not even called, and against whom the court has sustained a *Daubert* challenge is manifestly unjust." *Id.*

Like the expert in *Rogers,* English's testimony was excluded. The District Judge noted that the report (1) failed to comply with the scheduling order because his testimony was not limited to just rebuttal and (2) applied incorrect standards twice. If HANO had complied with the Court's June 2, 2017 expert report deadline, in all likelihood only the setting of one deposition would have occurred, and probably in July avoiding the Tropical Storm hazard.

Still, the deposition at most confirmed what Liberty and Parkcrest already knew based on evidence previously received. It would be unfair to allow Liberty and Parkcrest to insist on taking a deposition and after the expenses were incurred refuse to pay for them in contradiction of the rule. Likewise, it is unfair that HANO tried to retrofit their expert to respond to the merits of the claim and not just rebut the plaintiff's substantive claims.

Given the weight of the evidence, the Court finds that it would be manifestly unjust to require the Plaintiff and Intervenor to pay for the November 2, 2017 deposition.

### IV. Reasonable Expert Fee

Now, turning to the determination of the reasonableness of the English's expert fee, English submitted an invoice for the August 29, 2017 deposition in the amount of $7,189.02. HANO seeks to recover all of English's charges from the Plaintiff and Intervenor, even the amount incurred by HANO's decision to retain him in addition to the deposition. HANO simply submitted the invoices of English and generally contends that his charges are reasonable.


Parkcrest and Liberty contend that English's exclusion at trial warrants a significant reduction in his fee. R. Doc. 494, p. 6. That his preparation time is not recoverable, and his travel costs are excessive. R. Doc. 494, p. 7, 11. Parkcrest and Liberty further contend they should not be required to bear the costs associated with the time HANO and Ted Hebert spent questioning English during his deposition. R. Doc. 494, p. 13. Parkcrest and Liberty contend that HANO was actually only charged a $5,000.00 deposit for English's services and now HANO is seeking roughly three times that amount from them. R. Doc. 494, p. 14.

Regarding expert fees for deposition testimony, Rule 26(b)(4)(C)(i) provides, in pertinent part, that the party seeking discovery from an expert whose opinions may be presented at trial must "pay the expert a reasonable fee for time spent in responding to discovery." Fed. R. Civ. P. 26(b)(4)(C)(i). The reasonable fee includes the expert's time spent in the deposition, time traveling to and from the deposition, and time spent gathering documents responsive to the deposition subpoena, but not the expert's time spent reviewing documents prior to the deposition. *In re Shell Oil Co.*, Nos. 88-1935, 88-2719, 1992 WL 31867, at *1 (E.D. La. Feb. 13, 1992). "Fees shall be supported by contemporary, itemized time records, segregated by types of services performed." *Id.*

English, CFS Senior Forensic Engineer, submitted two invoices for the two depositions. The first invoice regarding the August 29, 2017 deposition, he sought four (4) hours for the cancelled deposition at a rate of $275.00 per hour for a total $1100.00. The Court finds this cost reasonable.

English also only sought $150.00 per hour for travel time. English billed 19.5 hours for a flight that is 4.25 hours one way. Consequently, even allotting 1.5 hours wait time for him to be at the airport before the departure time, the reasonable hours for the flight is 11.5 hours (both ways),

which totals $1,725.00.

The Court finds that the cost of the ticket, $842.06, booked on August 7, 2017, four days after the Court ordered the deposition to occur on August 29, 2017. The Court finds the ticket cost of $842.06 is reasonable.

The Court finds that the following costs for hotel, parking, and rental car are reasonable: the Crowne Plaza Hotel fee $173.60, parking his personal car in Kansas City at the airport is $46.00, National Rental Car receipt of $152.62, and 2 day per diem at $64.00 or $128.00. The total for hotel, parking, and rental car costs total $500.22 are reasonable.

Finally, regarding the August 29, 2017 deposition costs, HANO seeks to recover $2,925.00 and $600.00 for document review and deposition preparation. However, these costs are not recoverable. *See In Re Shell*, 1992 WL 31867, at *1. English's invoices reveal nothing as to what he did to prepare for his deposition or what documents he reviewed, appearing instead to contain duplicative billing entries. English was required to provide contemporary, itemized time records, segregated by types of services performed. *Cali v. Republic Fire. Cas. Co.,* 2009 WL 10679758, at *2 (E.D. La. Nov. 25, 2009). Consequently, these costs are not recoverable.

As such, the total reasonable costs associated with the August 29, 2017 deposition are $4,167.28

### V. Conclusion

Accordingly,

**IT IS ORDERED** that **HANO's Rule 26(b)(4)(E) Motion for Expert Fees and Costs (R. Doc. 490)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that the motion is **GRANTED** regarding the August 29, 2017 deposition cancellation. The Court finds that the reasonable expert fee for the August 29,

2017 cancelled deposition is **$4,167.28.**

 **IT IS FURTHER ORDERED** that the motion is **DENIED** regarding the November 2, 2017 deposition for the reasons assigned.

 **IT IS FURTHER ORDERED** that Intervenor Liberty Mutual Insurance Company and Plaintiff Parkcrest Builders, LLC shall satisfy their obligation to Defendant HANO **no later than twenty-one (21) days** after the signing of this order.

New Orleans, Louisiana, this 15th day of September 2020.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**