UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PARKCREST BUILDERS, LLC | CIVIL ACTION |
| VERSUS | 15-1533<br>c/w 16-15849 |
| HOUSING AUTHORITY OF<br>NEW ORLEANS | SECTION: "J" (4) |
| | Applies to 15-1533 |

## ORDER & REASONS

Before the Court are a *Motion for Attorney's Fees and Costs* **(Rec. Doc. 668)** filed by Plaintiff-in-Intervention Liberty Mutual Insurance Company ("Liberty"), an opposition thereto (Rec. Doc. 672) filed by Defendant Housing Authority of New Orleans ("HANO"), and a reply (Rec. Doc. 675) by Liberty. Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED in part**, as stated herein.

## FACTS AND PROCEDURAL BACKGROUND

This litigation concerns a construction contract dispute between Parkcrest Builders, LLC ("Parkcrest") and HANO regarding the Florida Avenue: New Affordable Housing Units project (the "Project"). Liberty was Parkcrest's surety and was called upon to perform after HANO terminated Parkcrest prior to completion. Liberty entered into a Takeover Agreement with HANO to complete the Project and retained Parkcrest as its completion contractor. The Project continued to suffer delays and HANO eventually terminated Liberty and hired another firm to complete it.

Parkcrest filed this suit shortly after it was terminated by HANO alleging that HANO breached the Prime Contract by terminating Parkcrest for convenience. HANO filed a counterclaim asserting that the delays were solely attributable to Parkcrest. Liberty intervened shortly after it was terminated alleging breach of the Takeover Agreement, bad faith breach of contract, and wrongful termination against HANO. HANO asserted counterclaims against Liberty alleging bad faith breach of the Takeover Agreement and fraudulent misrepresentation.

The Court held a seven-day bench trial on this matter from February 20, 2018, to March 1, 2018. The Court found that the Project was substantially complete by December 31, 2015, and therefore HANO breached the Takeover Agreement by terminating Liberty on June 30, 2016, after substantial completion had been achieved.[1] The Court further found that "HANO [wa]s liable to Liberty for Liberty's reasonable attorney's fees, costs and interest due to HANO's breach of the Takeover Agreement."[2] Before Liberty filed its original motion for attorney's fees, HANO filed its notice of appeal; therefore, the Court denied the motion without prejudice pending resolution of the appeal. The Fifth Circuit largely affirmed the Court's judgment but held that it lacked jurisdiction over HANO's appeal of the unquantified award of attorney's fees and dismissed that portion of the appeal. *Parkcrest Builders, LLC v. Liberty Mut. Ins. Co.*, 796 F. App'x 852, 852-53 (5th Cir. 2020) (per curiam). Liberty's renewed motion for attorney's fees is now ripe for decision.

---

[1] (Findings of Fact & Conclusions of Law, Rec. Doc. 537, at 61-62).
[2] *Id.* at 66.

## PARTIES ARGUMENTS

Liberty seeks $526,192.25[3] in attorney's fees and $101,231.82 in costs for its two testifying expert witnesses. Liberty contends that its requested amount of attorney's fees is reasonable because it only accounts for hours worked following its termination by HANO in accordance with Clause 34(b)(4) of the Prime Contract, as incorporated by the Takeover Agreement, and the rates charged by its attorneys ranged from $185 to $250 per hour, well within prevailing market rates in New Orleans. Additionally, Liberty has excluded fees incurred by two attorneys that assisted with tasks performed by one of its three primary attorneys. Liberty thus asserts that it has excluded $643,757.25 in fees from its request. Liberty further argues that its request for expert witness costs is appropriate because they constitute "legal services" that were "reasonably necessary to prepare and present the termination claim to" HANO.[4]

HANO contends that Liberty is not entitled to any attorney's fees or expert witness costs because the terms of the Prime Contract do not allow for either. Specifically, HANO argues that Clause 34 does not allow for attorney's fees incurred in litigation but only for those incurred in preparing and presenting a termination claim to it. HANO asserts that this litigation cannot constitute Liberty's presentation of its termination claim because it failed to follow the disputes procedure outlined in

---

[3] While Liberty's motion initially sought $540,443.75 in attorney's fees, it acknowledged that $14,251.50 of that amount was subject to a separate fee motion pending before Magistrate Judge Roby (Rec. Doc. 489). Because that motion was resolved in Liberty's favor (Rec. Doc. 669), it acknowledges that it is appropriate to reduce the fees sought herein accordingly.

[4] (Rec.Doc. 668-1, at 28) (quoting Rec. Doc. 500-4, at 36).

3

Clause 31. Under that clause, HANO contends that Liberty could only file suit after submitting its claim to the Contracting Officer for a determination. Because Liberty never submitted a termination claim to HANO but instead went almost immediately to this Court for relief, HANO asserts that Liberty cannot recover its attorney's fees. HANO further contends that Liberty is not entitled to recover its expert witness costs under Clause 34 because that provision only provides for "costs of legal and accounting services" and the two experts are neither accountants nor lawyers but instead are an architect and a certified cost professional. Nevertheless, HANO offers that the Court could exercise its discretion to award the estimated cost of legal services Liberty would have incurred had it presented a claim in accordance with the procedures outlined by the Contract.

In the alternative, should the Court find that attorney's fees incurred in litigation are awardable under the Contract, HANO argues that the amount awarded should be reduced because there are numerous charges that either fall outside the scope of allowable attorney's fees or exhibit a lack of billing judgment.

Liberty maintains that the Court has already determined it is entitled to attorney's fees incurred during litigation and that HANO should not be allowed to relitigate the issue. Liberty asserts that attempting to submit a termination claim to HANO before instituting litigation would have been "vain, futile, and useless" because HANO "never intended to admit in good faith that it terminated Liberty" and

therefore "Liberty was forced to litigate the very issue of whether HANO terminated Liberty as part of presenting its termination claim to HANO."[5]

## LEGAL STANDARD

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Accordingly, the Court will apply Louisiana law to Plaintiff's request for attorney's fees.

Under Louisiana law, attorney's fees are recoverable only where authorized by statute or contract. *Rivet v. State, Dep't of Transp. & Dev.*, 96-145, p. 10 (La. 9/5/96), 680 So. 2d 1154, 1160. Here, the basis of Liberty's fee award is contractual.

"An accepted method with which to begin calculation of a fee award under Louisiana law is to multiply the hours worked by an hourly rate the Court deems to be reasonable." *Bodin v. Butler*, No. 07-3505, 2008 WL 5122354, at *5 (E.D. La. Dec. 4, 2008). Courts then consider the following ten factors for determining the reasonableness of an award for attorney's fees:

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge.

*Rivet*, 680 So. 2d at 1161. These guidelines are permissive and consideration of all of them is not necessary. *Fourchon Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561, 1568 (5th Cir. 1988).

---

[5] (Rec. Doc. 675, at 2).

5

## **DISCUSSION**

### I.  ATTORNEY'S FEES

The Court has already determined that "HANO is liable to Liberty for Liberty's reasonable attorney's fees, costs and interest due to HANO's breach of the Takeover Agreement"[6] and therefore will not allow HANO to relitigate the issue. However, the Court had reserved decision on "[w]hether or not Liberty is entitled to 'litigation expenses,'"[7] specifically attorney's fees incurred in litigation, and now concludes that it is.

HANO contends that Liberty is not entitled to litigation expenses because (1) Liberty failed to present a termination claim to HANO as required by Clause 34, and (2) even if Liberty had, Clause 34 limits recoverable legal expenses to those incurred before litigation.

Clause 34 of the Prime Contract, as incorporated into the Takeover Agreement, provides, in pertinent part:

> (b) If the performance of the work is terminated, either in whole or in part, [HANO] shall be liable to the Contractor for reasonable and proper costs resulting from such termination upon the receipt by [HANO] of a properly presented claim setting out in detail: . . . (4) the actual or estimated cost of legal and accounting services reasonably necessary to prepare and present the termination claim to [HANO] . . . .[8]

However, the Court found that HANO breached the Takeover Agreement by terminating Liberty after substantial completion had been achieved and therefore

---

[6] (Rec. Doc. 537, at 66).
[7] (Rec. Doc. 555, at 2).
[8] (Rec. Doc. 500-4, at 36) (emphasis added).

6

Liberty was excused from performing under the contract.[9] *See, e.g., Commerce Ins. Agency, Inc. v. Hogue*, 618 So. 2d 1048, 1052 (La. App. 1st Cir. 1993) ("[W]here one party substantially breaches a contract, the other party to it has a defense and an excuse for nonperformance."). Thus, HANO has no right to enforce Liberty's compliance with the procedure in Clause 34.

Nor does the language of Clause 34 unambiguously exclude litigation expenses or limit expenses to those incurred before litigation. Because HANO breached the contract, Liberty was not required to adhere to the procedures for presenting a claim. Further, because HANO refused to acknowledge that it had terminated Liberty and instead insisted that Liberty had abandoned the Project, litigation was "reasonably necessary" for Liberty to present its termination claim to HANO. HANO's refusal to acknowledge Liberty's termination distinguishes this case from *Jeffrey B. Peterson & Associates v. Dayton Metropolitan Housing Authority*, No. 17306, 2000 WL 1006562, at *13 (Ohio Ct. App. July 21, 2000), on which HANO relies, because there, the court found that the defendant housing authority had not abused its discretion in terminating the contract because the housing authority had legitimate grievances with the contractor's performance, whereas here, the Court found that "HANO's refusal to grant substantial completion to Liberty/Parkcrest and its subsequent contract with Colmex was unjustified and economically wasteful[,] . . . caus[ing] approximately four and one-half months of further delay . . . [and] greatly increas[ing] the cost to final completion."[10] The *Peterson* court explained:

---

[9] (Rec. Doc. 537, at 62).
[10] (Rec. Doc. 537, at 65).

7

> [A]fter reading many cases, we believe that 'bad faith' and 'clear abuse of discretion' should limit an agency's ability to originally terminate a contract for convenience as well as its later reliance on contractual clauses allowing conversion of default termination. As the court in *Kalvar* [*Corp. v. United States*, 543 F.2d 1298 (Ct. Cl. 1976)] noted:
>
> [I]n the absence of bad faith or clear abuse of discretion, the effect of the constructive termination for convenience is to moot all breach claims and to limit recovery to costs which would have been allowed had the contracting officer actually invoked the clause.
>
> 543 F.2d at 1304. Therefore, because legitimate breach claims are mooted when the government or a public agency retroactively asserts termination for convenience, some restraint is appropriate.

*Id.* at *10. Because HANO abused its discretion in terminating Liberty and refused to acknowledge that it had done so, litigation was reasonably necessary for Liberty to present its claim to HANO. Therefore, Liberty is entitled to recover its attorney's fees incurred in litigation.

HANO makes several challenges to the reasonableness of the amount of attorney's fees requested by Liberty. It contends that several categories of expenses should be excluded because they do not fall within the scope of "preparing and presenting Liberty's termination claim," including entries for (1) reporting to the client, (2) reviewing HANO's documentation that formed the basis for the default termination, (3) reviewing any work performed by the completion contractor, and (4) deposing witnesses not related to Liberty's claim. HANO argues that the repeated references to inner-office conferences and the various entries that are redacted due to an improper assertion of attorney-client privilege demonstrate a lack of billing judgment and should be excluded or, alternatively, that the Court should apply a percentage reduction to the number of hour awarded in lieu of a line-by-line analysis.

8

HANO's arguments are meritless, as Liberty has already exercised billing judgment by excluding $643,757.25 in fees from its request, including (1) fees incurred before termination; (2) redundant fees incurred by junior attorneys; (3) fees incurred from payment bond claims or disputes with subcontractors; (4) fees incurred in defense of HANO's non-contract claims; (5) fees incurred in association with third-party subpoenas; (6) fees incurred in opposing HANO's motion for expert fees and costs; (7) fees for administrative work by staff (except for paralegal assistance in preparing for trial); and (8) fees incurred with execution of the Court's judgment. The Court finds Liberty's requested fee amount to be reasonable, particularly in light of the way in which HANO conducted itself throughout this litigation. Accordingly, the Court will grant Liberty's request for $526,192.25 in attorney's fees.

## II.  EXPERT WITNESS COSTS

Liberty contends that its expert witness costs constitute "legal services" but fails to define the term other than to argue that it is "broader . . . than only attorneys' fees."[11] HANO argues that Liberty is not entitled to these fees because its experts did not provide "legal and accounting services," as allowed by Clause 34, but instead were an architect and a certified cost professional.

"[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). While § 1920(3) authorizes courts to tax costs for witness

---

[11] (Rec. Doc. 668-1, at 30).

fees, § 1821 limits these costs to a daily attendance fee and travel and lodging expenses. *See* § 1821(b)–(d); *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994). However, these costs are not at issue here because Liberty had them taxed by the Clerk of Court.[12] Accordingly, Liberty's instant request turns on the existence of contractual authority for the Court to tax Liberty's costs for its expert witnesses to (1) review documents, (2) prepare their expert reports, and (3) prepare for trial.

The Court finds that Clause 34's provision for "the actual or estimated cost of legal and accounting services reasonably necessary to prepare and present the termination claim to [HANO]" does not explicitly authorize costs for these expert witnesses because they did not provide legal or accounting services. *See Crawford*, 482 U.S. at 445. Therefore, Liberty's request must be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Liberty's *Motion for Attorney's Fees and Costs* **(Rec. Doc. 668)** is **GRANTED in part**, and Liberty is awarded $526,192.25 in attorney's fees.

New Orleans, Louisiana, this 2nd day of December, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[12] (Rec. Doc. 677, at 2).